Antonio V. PEREZ d/b/a Paco's, Respondent,

v.

W. Yates WEBB et al., Appellants.

No. KCD 27206.

Missouri Court of Appeals, Kansas City District.

Feb. 9, 1976.

Aaron A. Wilson, City Atty., Rex G. Bostwick, Asst. City Atty., Kansas City, for appellants.

Michael J. Drape, Galen P. Knowlton, Knowlton & Drape, Kansas City, for respondent.

Before SHANGLER, P. J., and SWOFFORD and SOMERVILLE, JJ.

SWOFFORD, Judge.

This is an appeal by W. Yates Webb, Director of Liquor and Amusement Control (hereafter Director) and the members of the Liquor Control Board of Review (hereafter Board) of Kansas City, Missouri, from a judgment of the Circuit Court reversing the decision of the Board and ordering the Director to grant the application of the Respondent for transfer of his liquor permit from one location to another. The Director refused the application to transfer such license; his decision was upheld by the Board (after a full hearing); and, the Respondent thereupon filed a petition in the court below which, while denominated a petition for injunctive relief, was in fact a petition for review under the Administrative Procedure and Review Act (and particularly Section 536.100 et seq. RSMo 1969). It was so treated by the court and the parties below and these proceedings will be so reviewed here.

More specifically, Antonio V. Perez (hereafter Respondent) held a valid license to sell liquor by the drink and in package at 4343 Troost Avenue, Kansas City, Missouri. In March of 1973, he made an application to the Director to transfer such license and his

operation thereunder, to 1010 Oak Street, Kansas City, Missouri.

This application was denied by the Director upon the basis that due to the then existing density of the licenses in the area of 1010 Oak Street, the proposed transfer of Respondent's license was not in the best interest of the area. The Director's decision and the Board's order affirming that decision were based upon the provisions of Section 4.61, Chapter 4, Article X, Alcoholic Beverages, Code of General Ordinances of Kansas City, Missouri. This Article X covers "Location of Retail and 'C.O.L.' [1] Premises" and Section 4.61 thereof states:

> "*Discretion as to issuance.* In passing upon any application for a license under this chapter, the director of liquor control shall have the authority to take into consideration the location of the proposed business *and the density of alcoholic beverage licenses in the area* for which a license is sought, and shall have authority to refuse or grant such license when in his judgment such issuance shall not be *in the best interest of the locality involved.*" (Emphasis supplied)

The Respondent's position in the administrative phases of this matter, in the court below and here, is that the Director had no authority under Section 4.61, as set out above, but in passing upon his application to transfer the license the Director was required to proceed solely under Section 4.53(b) of Article IX, entitled "Renewals, Transfers, Lost Licenses and Changes in Licenses." Section 4.53 is entitled "Transfer of Location" and provides:

> "(a) *Application required.* The director must first approve a transfer of a license to a different location and the application for permission to transfer must be in writing, together with twenty-five dollars ($25.00) *to cover investigation costs,* and shall set forth:
>
> (1) The name and residential address of the licensee and current business address.

> (2) The address and legal description of the premises to which transfer is sought, together with the name and address of the owner, a complete set of building plans, and a descriptive list of the fixtures in the proposed place of business.
>
> (3) An affidavit by such licensee that he has not violated any of the provisions of this chapter or of the state liquor laws since the license was granted.
>
> (4) *Any additional information that the director may require.*
>
> (b) *Discretion as to transfer.* Any application for a transfer of location *shall be processed* when received. *Nevertheless,* the director *may* refuse to approve any transfer of the business of a licensee whenever such licensed business is under citation by the city or the state department of liquor control, and the matter has not yet been finally adjudicated." (Emphasis added)

The pertinent allegations in the Respondent's petition filed in the court below seeking to set aside the final administrative rulings of the Director and the Board state his position as follows:

> "6. That the action of the defendant Webb in refusing to permit the transfer is illegal, unreasonable, oppressive, discriminatory and a denial of due process. That the question of density has no standard, that too much discretion is vested in the Director. That in case of a transfer, the Director's discretion is defined in Section 4.53B. That Section 4.61 upon which the Director relies is not applicable.
>
> 7. That the action of the Liquor Control Board of Review sustaining the actions of the Director was illegal, unreasonable, oppressive, arbitrary and discriminatory, beyond the powers of the Director and a denial of due process to the plaintiff."

---

1. Consumption of Intoxicating Liquors.

The defendants in the proceedings below (appellants here) denied the allegations of the above-quoted parts of the petition and the cause was submitted to the court upon the transcript of the evidence in the hearing before the Board and the exhibits in connection therewith, without the introduction of further evidence.

No question is or was raised as to the form of Respondent's application to transfer his license from 4343 Troost to 1010 Oak; his compliance with the other procedural requirements of Section 4.53(a); or, that he was at the time under any unadjudicated citation from either city or state liquor control authorities. The sole basis for the Director's rejection of the application and the Board's affirmance of such refusal was Section 4.61, above quoted. The evidence established, without contradiction, that at the time of Respondent's application to transfer there were two existing establishments operating under C.O.L. licenses in the block at 1010 Oak; two in the block east; two in the block south; and, five others in the area.

■ The Director testified that he took these facts into account as well as the character of the area of 1010 Oak Street; the type of residents in the vicinity; and, concluded that the application to transfer should be denied because of all of these factors. He freely admitted that licenses had been issued (or transferred) in areas where the density of existing licenses was greater, but that such areas catered to conventions, tourist, transit and entertainment business. It was upon these facts that the administrative officials acted in the denial of the application within the discretion granted under Section 4.61, which the Respondent stoutly maintains is inapplicable. His position, that the only discretion granted the Director in these circumstances, is the narrow limit as set forth in Section 4.53(b), that the Director "may" deny the transfer if a citation is pending against the applicant. This position is obviously untenable and was logically and forcefully demonstrated to be so by the court below in its Memorandum Opinion and Order. The portion of that opinion by Clark, J., here quoted, is adopted as the opinion of this court on this point:

"By Chapter 4 of its ordinances, Kansas City has adopted a plan for regulation of the sale of alcoholic beverages by licensing persons and premises where such business may be transacted. That such is a valid exercise of municipal authority has long been beyond any question. *Zinn v. City of Steelville* [351 Mo. 413], 173 S.W.2d 398 (Mo.1943).

The chapter is divided into fifteen articles, number IX of which deals with the subject of Renewals, Transfers, Lost Licenses and Changes in Licensees. It is from this article that section 4.53(b) quoted above is taken. Article X covering the subject, Location of Retail and 'COL' Premises, contains section 4.61 on the matter of discretion given the director, also quoted above. Other articles and sections of the chapter specify various restrictions as to the location of licensed premises including requirements as to compliance with fire, health and building codes, zoning ordinances, distances from churches and schools, conditions where the premises are partially occupied as a dwelling, visibility of the interior and numerous other conditions and limitations imposed in regulation of this business activity.

Plaintiff contends that section 4.53 covers the full subject matter of license transfers from one location to another and that defendant director is obligated to process a transfer application when in proper form subject only to an exercise of discretion when the subject is under citation by state or municipal liquor authorities. Under this interpretation, not only would section 4.61 be inapplicable to transfers, but other conditions required to be met in the original issuance of a license would also be ineffective.

To suggest that *all regulatory power fails once a license has been issued and*

*that upon application, the licensee may establish a new location without regard to compliance with any municipal code requirements is to demonstrate the absurdity of the proposition.* The entire scheme of regulation in the sale of alcoholic beverages depends not only on the control of licenses when first issued but on continous (sic) supervision of those who hold licenses and operate the businesses in conjunction therewith. Such is and must have been the manifest intent of the council in adopting chapter 4 of the ordinances.

As a matter of draftsmanship, the subject ordinances leave much to be desired. Section 4.53 should cover the entire subject of transfers and should, at a minimum, incorporate by reference other sections applicable to the subject. We regard it as the duty of the Court, however, to construe the words used in the ordinance, if at all possible, in that manner which will give effect to the lawmaker's intent.[2] As previously noted, strict construction of section 4.53 as advocated by plaintiff *would destroy any reasonable control over licensees who could, virtually at will, apply for and move business locations wherever the opportunity of the moment suggested.*

The applicability of section 4.61 to the subject case turns on construction of the words 'application for a license.' We are of the opinion that within the context of the chapter, these words include not only the initial application for a new license but any application involving a license change such as the removal of a business to a new location. Regulation in the matter of density, zoning, building codes and the like contemplates the examination of proposed locations to determine if they qualify. *The mere fact that the applicant is an existing licensee does not in any way establish the suitability of the new premises for the proposed business.*

By holding section 4.61 as applicable to granting of license transfers we are furthering the legislative intent and prompting the purposes for which the ordinances were adopted. *City of St. Charles v. Union Electric Co. of Missouri,* 185 S.W.2d 297 (Mo.App.1945). *To hold otherwise would, as we view the wider impact of such a result, virtually nullify any control over location of licensed retail liquor establishments.* The conclusion reached, therefore, is that code section 4.61 is applicable to license location transfers, as well as to processing of new license requests." (Emphasis and footnote supplied)

■ The Director properly applied the standard of Section 4.61 as to the density of existing licenses, which action was affirmed by the Board. The conclusions of these administrative branches of the city government were based upon facts. The scope of judicial review of such matters is strictly limited. The reviewing court cannot determine the weight of the evidence nor substitute its discretion for that of the administrative body. Generally, its function is to determine primarily whether the decision was supported by competent and substantial evidence upon the whole record; whether the administrative act was arbitrary, capricious or unreasonable; and, whether an abuse of discretion appears. *Gordon v. Puritan Chemical Company,* 406 S.W.2d 822, 825–826[2, 3, 4] (Mo.App.1966); *Greene County v. Hermel, Inc.,* 511 S.W.2d 762, 768[4] (Mo.1974); *Missouri Real Estate Commission v. Steger,* 509 S.W.2d 47, 49[1] (Mo. banc 1974); *Tom Boy, Inc. v. Quinn,* 431 S.W.2d 221, 225[1, 2] (Mo. banc 1968); *Mora v. Hastings,* 416 S.W.2d 642, 644[2] (Mo.App.1967); *May Department Stores, Inc. v. Supervisor of Liquor Control,* 530 S.W.2d 460, 468[2] (Mo.App.1975). The "burden is upon the party seeking to set aside the [administrative] order to show by

---

**2.** See: *St. Louis County v. State Highway Commission,* 409 S.W.2d 149, 152[3, 4] (Mo. 1966); *Kirkwood Drug Company v. City of* *Kirkwood,* 387 S.W.2d 550, 554[5] (Mo. 1965).

clear and satisfactory evidence that the order is unreasonable or unlawful", *Marshfield Community Bank v. State Banking Board*, 496 S.W.2d 17, 28[27] (Mo.App.1973).

■ When this record as a whole is viewed within the confines of these principles, it must be held that the denial of the Respondent's application to transfer was lawful under Section 4.61 of the Municipal liquor code; was based upon competent and substantial evidence; was not arbitrary, capricious or unreasonable; and, no abuse of discretion appears.

While the court below properly held that Section 4.61 was applicable to the location transfer of the Respondent's license, it held that section to be unconstitutional and void as in violation of Article I, Section 10, of the Missouri Constitution, and the Fourteenth Amendment of the Constitution of the United States. This holding was based upon the theory that Section 4.61 covered an area of nondelegable legislative functions; was an attempted grant to an administrative officer of powers and duties in connection with carrying out legislative discretion; and, that no policy, gauge, standards or uniformity in application of such standards were prescribed. Thus, the court reasoned the section was unconstitutional as clothing the administrative agency with arbitrary and undefined discretion.

Article V, Section 22, of the Missouri Constitution, provides for judicial review of administrative proceedings, as provided by law. Pursuant to such constitutional mandate, Section 536.140 RSMo 1969 was enacted covering the "Scope of judicial review—judgment—appeals" in administrative proceedings, which provides, *inter alia*:

" * * *

2. The inquiry may extend to a determination of whether the action of the agency

(1) Is in violation of constitutional provisions;

* * * "

■ That judicial review of administrative proceedings *"may"* include constitutional questions at the circuit court level, is no longer open to doubt. *Merritt v. State Hospital No. 1, Fulton*, 403 S.W.2d 940 (Mo.App.1966); *Smith v. Missouri State Highway Commission*, 488 S.W.2d 230 (Mo.App. 1972).

Counsel has not cited, nor has research disclosed, any authority which holds that the well-defined and mandatory rules relating to the procedures required to raise and preserve constitutional questions were intended to be or are modified by Section 536.140(2)(1), supra. Such rules are stated and restated in the civil case law of Missouri, with clarity and certitude. Thus, in *City of St. Louis v. Butler Co.*, 358 Mo. 1221, 219 S.W.2d 372, 380[10] (banc 1949), the rules are stated:

> "To invoke our jurisdiction on the ground a constitutional question is involved a party *must* follow four requirements. 1. He must raise the constitutional question at his first available opportunity; 2. he must designate specifically the constitutional provision claimed to have been violated, such as by explicit reference to the Article and Section or by quotation of the provision itself; 3. he must state the facts showing such violation; 4. he must preserve the constitutional question throughout for appellate review." (Emp. sup.)

See also: *Mike Berniger Moving Co. v. O'Brien*, 234 S.W. 807, 812 (Mo.1921); *Magenheim v. Board of Education*, 340 S.W.2d 619, 621 (Mo.1960); *Norkunas v. Norkunas*, 480 S.W.2d 92, 93[2, 3] (Mo.App.1972); *City of Florissant v. Rouillard*, 495 S.W.2d 418, 419[1] (Mo.1973).

■ Even though the constitutionality of a statute or ordinance is included within the permissible scope of judicial inquiry upon review of administrative decisions under Section 536.140(2)(1) RSMo 1969, quoted above, it is beyond the scope of logic and does violence to the existing and binding rules with reference to pleading and preservation of constitutional points, to hold that

in such judicial review a court (the Circuit Court in this instance) is *required* to (or would be within its historical function, if it did) search, *sua sponte*, for constitutional infirmities not put forward by the parties.

As was said in *State ex rel. Houser v. Goodman*, 406 S.W.2d 121, 126[8] (Mo.App. 1966):

"With few exceptions, the forte of any court is to relegate itself to limbo until presented proper pleadings to be employed as vehicles for judicial locomotion. Even in matters over which a court has general jurisdiction, it cannot, *ex mero motu* set itself in motion nor have power to determine questions unless they are presented to it in the manner and form prescribed by law.  *  *  * "

Not only would such a rule impose an onerous and unnecessary task upon the judicial review tribunal—one in which the parties evidenced no interest—but, if it was concluded that such constitutional problem existed, the court would, *sua sponte*, then have to decide if such problem was one of construction or application to test its own jurisdiction.  Such foolish and useless intent will not be ascribed by this court to the legislative intent implicit in the enactment of Section 536.140(2)(1) RSMo 1969.  *City of Joplin v. Joplin Water Works*, 386 S.W.2d 369, 373–374[5–7] (Mo.1965).

 A close review of this record discloses that the Respondent did not comply *with any of the four mandatory requirements* to invoke constitutional questions, as so clearly delineated in *City of St. Louis v. Butler Co.*, supra, and other authorities cited above. Indeed, even here, no such attempt is forthcoming from Respondent.  In his brief filed with this court, he states (Page 7):

"  *  *  *  *respondent did not question the constitutionality of the law* pertaining to alcoholic beverages; *we have throughout* asked the Court to give full legislative intent to Section 4.53 and *to find that Section 4.61 is not applicable in this matter.*"  (Emphasis supplied)

The constitutional considerations upon which this case was ruled in the court below were foreign to the matter before it, should not have been considered, and were, therefore, not decisive.

The judgment below is reversed and the cause remanded with directions to enter judgment affirming the order of the Liquor Control Board of Review of Kansas City, Missouri sustaining the action of the Director of Liquor and Amusement Control denying the application of the Respondent to transfer his license for sale of intoxicating liquor at retail and by the drink and in the original package from 4343 Troost Avenue to 1010 Oak, Kansas City, Missouri.

All concur.