Robert ROSS, Plaintiff-Respondent,

v.

Tracy V. ROBB, Guy S. Wright, Howard Fleming, David B. Riley, Salim S. Tadrus, and Larry D. Zimmerman, as duly elected members of the Board of Education of Moberly Public School District No. 81, Defendants-Appellants.

No. WD32540.

Missouri Court of Appeals, Western District.

May 10, 1983.

William O'Donnell Lee, Hunter, Chamier, Lee, Elsberry & Wright, Moberly, for defendants-appellants.

John L. Port, Windsor, for plaintiff-respondent.

Before SOMERVILLE, C.J., and SHANGLER, PRITCHARD, DIXON, CLARK, MANFORD and KENNEDY, JJ.

DIXON, Judge.

The school board appeals from the action of the circuit court in reinstating respondent Robert Ross as a teacher in the school district. Upon a finding that this court has no jurisdiction, the cause is transferred to the Supreme Court of Missouri. Mo. Const. Art. V, § 3.

Pursuant to § 168.116 RSMo 1978,[1] Ross was discharged as a tenured teacher. This dismissal was after a hearing and statement of charges. The cause for dismissal was activity of the teacher that was found by the school board to be "immoral conduct." § 168.114.1(2). The teacher petitioned the circuit court for review. § 168.120. The circuit court then entered its findings, conclusions, and order, which specified the sole ground for decision as follows:

> When it comes to subparagraph 5 of paragraph 2 of Section 536.140, as to whether or not there was a fair trial, the Court will find that there was not . . . . .

---

1. All statutory references are to Revised Statutes of Missouri, 1978.

The Court is of the opinion that fair trial ... cannot be had when the same body draws the charges, employs the attorney to present their evidence, and then sets [*sic*] as judge and jury to render a verdict.

This issue was not raised in the petition for review. The circuit court addressed none of the issues raised by respondent's petition for review, relying solely on the above-stated ground for its decision.

The brief for the school board filed in this court addressed all of the issues raised by the petition for review, as well as the extraneous ground relied upon by the circuit court, but not raised in the petition for review. Respondent's brief countered supporting the extraneous ground of the circuit court decision and also asserting that the findings of the school board were not supported by competent and substantial evidence, as well as the claim of constitutional invalidity of the statute. The briefs thus assert three issues: (1) the propriety of the action of the trial court ruling on the extraneous issue; (2) the issue of a lack of substantial competent evidence to support the findings of the school board; and (3) the constitutional issue. Before the constitutional claim of invalidity of the statute is reached (and thus the question of our jurisdiction), the other claims must be resolved.

The review by both the circuit court and this court in a contested case has been recently defined by our court in *Phipps v. School District of Kansas City,* 645 S.W.2d 91 (Mo.App.1982):

The statutes, rules and precedents which define and measure the role of the circuit court on review of an administrative contested case codefine and comeasure the role of the appeals court. Thus, neither the circuit court under § 536.-140.1 nor the court of appeals from the judgment of the circuit court review *de novo* ...; rather, *each* reviews the decision of the agency ..., *each* defers to the administrative adjudication ... and *each* must sustain the agency decision unless

the contestant by cogent evidence proves that the determination does not rest on competent and substantial evidence or is otherwise not valid ....

*Id.* at 95.

The initial question, then, must be whether this court will review the issue decided by the circuit court, which was not raised in the petition for review.[2] Whether the circuit court was required to have decided such an issue, not raised by the parties, and whether this court is required, in turn, to do so is not free from doubt.

Section 536.140 provides the statutory direction for the scope of review for both this court and the circuit court. It reads in pertinent part:

536.140. Scope of judicial review—judgment—appeals

1. *The court shall hear the case* without a jury and, *except as otherwise provided in subsection 4,* shall hear it *upon the petition and record filed as aforesaid.*

2. The inquiry may extend to a determination of whether the action of the agency

(1) Is in violation of constitutional provisions;

(2) Is in excess of the statutory authority or jurisdiction of the agency;

(3) Is unsupported by competent and substantial evidence upon the whole record;

(4) Is, for any other reason, unauthorized by law;

(5) Is made upon unlawful procedure or without a fair trial;

(6) Is arbitrary, capricious or unreasonable;

(7) Involves an abuse of discretion.

(emphasis supplied).

The emphasized language quoted above seems to premise the application of all of the subsections of § 536.140.2 upon a requirement that the case be heard by the circuit court and, in turn, by this court upon the "petition and record." That construction of the statute would preclude a re-

---

**2.** Under *Phipps,* this court, if it considered such an issue, would determine it independently, and

not as a review of the circuit court determination.

quirement of review as to matters not raised in the petition for review.

The "subsection 4" excepted in the language quoted is § 536.140 subsection 4 providing for supplementation of the record under specified circumstances. This subsection has no effect on the language of § 536.140 subsection 1 relating to the petition.

*Perez v. Webb,* 533 S.W.2d 650, 655 (Mo. App.1976), so holds. In that case, the circuit court decided the case on a constitutional principle not contained in the petition of the aggrieved party. The court of appeals said:

> Even though the constitutionality of a statute or ordinance is included within the permissible scope of judicial inquiry upon review of administrative decisions under Section 536.140(2)(1) RSMo 1969, quoted above, it is beyond the scope of logic and does violence to the existing and binding rules with reference to pleading and preservation of constitutional points, to hold that in such judicial review a court (the Circuit Court in this instance) is *required* to (or would be within its historical function, if it did) search, *sua sponte,* for constitutional infirmities not put forward by the parties.

> . . . . .

> Not only would such a rule impose an onerous and unnecessary task upon the judicial review tribunal—one in which the parties evidenced no interest—but, if it was concluded that such constitutional problem existed, the court would, *sua sponte,* then have to decide if such problem was one of construction or application to test its own jurisdiction. Such foolish and useless intent will not be ascribed by this court to the legislative intent implicit in the enactment of Section 536.140(2)(1) RSMo 1969. *City of Joplin v. Joplin Water Works,* 386 S.W.2d 369, 373–374[5–7] (Mo.1965).

> . . . . .

The constitutional considerations upon which this case was ruled in the court below were foreign to the matter before

it, should not have been considered, and were, therefore, not decisive.

*Id.* at 655–56.

The holding of *Perez* is consistent with principled appellate review. A court sitting as an appellate court considers only allegations of error raised by the appealing party and does not *sua sponte* review for error not asserted or raised aside from a limited power to review for plain error. Rule 84.13. That principle of appellate review is stated in *State ex rel. Houser v. Goodman,* 406 S.W.2d 121 (Mo.App.1966):

> With few exceptions, the forte of any court is to relegate itself to limbo until presented proper pleadings to be employed as vehicles for judicial locomotion. Even in matters over which a court has general jurisdiction, it cannot, ex mero motu, set itself in motion nor have power to determine questions unless they are presented to it in the manner and form prescribed by law.

*Id.* at 126.

The *Perez* case would appear to control, but it does not stand alone. In an earlier case, *May Department Stores Co. v. State Tax Commn.,* 308 S.W.2d 748 (Mo.1958), the supreme court concluded that no authority denied a *party* the right to raise on appeal a question not asserted in the petition for review. The language of the *May* case on that issue is as follows:

> Defendants say that this point was not raised in the petition for review, that it was not urged before the Commission, and that it is not properly here. We have searched the petition with the point in mind; we find no facts alleged which would raise the point, and no such theory of invalidity advanced. However, our statutes providing the remedy of judicial review (§§ 536.100, 536.110) do not require specific grounds to be stated in the petition, as does, for instance, the Public Service Commission Act in motions for rehearing (see §§ 386.500, 386.510); we find no previous authority requiring such under Chapter 536. We hesitate to impose the requirement here, although counsel did see fit to set out the other

grounds in great detail. Under the circumstances we shall consider the point. *Id.* at 762.

The *May* opinion neither mentions nor discusses § 536.140(1). This court, in *Century State Bank v. State Banking Board,* 523 S.W.2d 856 (Mo.App.1975), relying on the language of *May* set forth above, again permitted a *party* to raise an issue on review in the appellate court that was not raised in the petition for review. In doing so, *Century State Bank* overruled two cases, *Carroll Construction Co. v. Kansas City,* 278 S.W.2d 817 (Mo.App.1955), and *Isgrigg v. Board of Trustees of Policemen's & Firemen's Pension Board,* 401 S.W.2d 936 (Mo. App.1966), in which courts had refused to consider the failure of the agency to make findings of fact and conclusions of law when that issue was not raised in the petition for review.

In *Century State Bank, supra,* the party raised the issue in terms of a violation of § 536.090, which explicitly requires such findings and conclusions. As a departure from the procedure imposed on the agency by statute, the failure of the agency in *Century State Bank* to make findings of fact and conclusions of law does not depend on a scope of review analysis but upon a jurisdictional ground. A similar violation of a statutory direction to the State Tax Commission was involved in the *May* case.

No case has been found in which a court has considered a nonjurisdictional issue not contained in the petition for review and not based upon statutory irregularity. The doctrine of *Century State Bank, supra,* and *May, supra,* appears to rest upon the failure of the agency to conform to a statute governing its procedure, which deprived this court of jurisdiction to review in accordance with the constitutional mandate of Mo. Const. Art. V, § 18. A construction of the statute and interpretation of the case law that narrowly limits the holding of *Century State Bank* to that rationale with respect to the necessity of raising an issue in the peti-

tion for review is consistent with principles of appellate review. If § 536.140 is read as requiring the review of any claim comprehended within the statute, the task of review by both the circuit court and this court becomes gargantuan. If such a view of the statute prevailed, then any sort of a shotgun petition for review would permit argument and briefing of any claim comprehended within any subsection of the statute. Under the teaching of *Phipps,* 645 S.W.2d 91, the burden at this level of review would be intolerable. Since our review under *Phipps* is of the agency action, a rule permitting briefing in this court of any issue whether included in the petition for review or not would intolerably expand the issues that could be briefed and argued in this court.

 It must be concluded that this court should not review under our scope of review the issue raised by the trial court and briefed for the first time in this court. If this court undertakes such a review, the question of our jurisdiction to do so would require determination since the effect of the circuit court's holding is to render invalid the statutes under which the board acted in preferring the charges and conducting the hearing.

The issue of evidentiary support is likewise without merit. There can be no doubt that the board's findings were supported by substantial and competent evidence.[3]

This leaves for determination the issue of the claimed invalidity of § 168.114 upon due process grounds. The petition for review contained the following allegation:

That the said FINDINGS AND DECISIONS of said Board of Education of Moberly Public School District No. 81 are in violation of constitutional provisions in that Section 168.112, Revised Statutes of Missouri, providing that the contract of a tenured teacher may be terminated for "immoral conduct" is so vague and uncertain as to be unconstitutional; and said

---

**3.** In view of the extensive treatment of the facts in the dissent, no recitation of the salient

facts and evidence is necessary.

vague and uncertain statute deprives the Petitioner of his rights of due process as protected by the U.S. Constitution.

The school board asserts that the rule for the determination of the timeliness and validity of a constitutional challenge is set forth in *Perez v. Webb,* 533 S.W.2d at 655:

Thus, in *City of St. Louis v. Butler Co.,* 358 Mo. 1221, 219 S.W.2d 372, 380[10] (banc 1949), the rules are stated:

"To invoke our jurisdiction on the ground a constitutional question is involved a party *must* follow four requirements. 1. He must raise the constitutional question at his first available opportunity; 2. he must designate specifically the constitutional provision claimed to have been violated, such as by explicit reference to the Article and Section or by quotation of the provision itself; 3. he must state the facts showing such violation; 4. he must preserve the constitutional question throughout for appellate review." (Emp. sup.)

The reference to *City of St. Louis v. Butler Co.,* 358 Mo. 1221, 219 S.W.2d 372, 380 (banc 1949), in *Perez* does not identify the quotation given as being from the concurring opinion of Judge Douglas, in which no other judge concurred. However, the principal opinion in *St. Louis v. Butler,* in less precise terms, identifies the four elements necessary for preserving a constitutional issue. Assuming that the "test" involves the four factors listed in *Perez,* the present case presents a viable constitutional challenge.

There is no issue of timeliness. The issue was presented in the petition for review, which was the first opportunity to raise the issue in a forum with jurisdiction to decide the issue.

The facts of the application of § 168.114 in violation of the due process clause were before the circuit court. The requirement

that the assertion of the constitutional claim contain a sufficient factual statement to enable the court to rule the issue arises from the prior requirement that the issue be raised at the earliest opportunity. In many cases where the constitutional issue must be raised at the pleading stage the facts have not been developed, and the trial court would be at a loss to determine the constitutional issue without some of the factual background giving rise to the dispute. The requirement of a statement of facts is of less significance in the context of circuit court review of a constitutional defect in administrative proceedings. This is because the circuit court has before it the factual record made before the administrative agency, and the facts upon which the constitutional issue is predicated are already a matter of the record required by §§ 536.070 and 536.130. The challenge to the application of the statute as "vague and uncertain" in the use of the term "immoral conduct" in § 168.114 was explicit.[4] The issue was pressed on appeal.

The only conceivable defect in the challenge under the ruling of *St. Louis v. Butler Co., supra,* is the failure to refer to the amendment number in identifying the due process clause of the Federal Constitution.

That specific question was raised in a later cause involving a similar challenge of "vagueness and uncertainty" under the "due process clauses" of the state and federal constitutions. *State v. Becker,* 268 S.W.2d 51 (Mo.App.1954). In resolving the question of whether the defendant designated or specified the particular sections of the constitutions claimed to be violated, the court held:

We realize that in certain cases the Supreme Court has stated that the party relying on a constitutional question should cite the constitutional provision

---

4. The merits of the constitutional issue raised are not relevant in the determination by the court of appeals of its jurisdiction. *University City v. Diveley Auto Body Co.,* 417 S.W.2d 107, 109 (Mo. banc 1967); *State v. Davis,* 462 S.W.2d 178, 181 (Mo.App.1970). Notwithstanding the apparent invalidity of the constitutional challenge, the case must be transferred,

because all doubts are resolved against jurisdiction in the court of appeals. *State v. Davis,* 462 S.W.2d at 181; *City of Olivette v. Graeler,* 329 S.W.2d 275, 281 (Mo.App.1959); *Dillen v. Edwards,* 254 S.W.2d 44, 49 (Mo.App.1953); *Chapman v. Schearf,* 220 S.W.2d 757, 759–60 (Mo.App.1949).

relied on by article and section number. *City of St. Louis v. Butler Co.,* supra; *Robinson v. Nick,* 345 Mo. 305, 134 S.W.2d 112. In other cases, however, a more general specification has been held sufficient. *Dye v. School Dist. No. 32 of Pulaski County,* 355 Mo. 231, 195 S.W.2d 874; *Wooster v. Trimont Mfg. Co.,* 356 Mo. 682, 203 S.W.2d 411; *City of St. Louis v. Friedman,* 358 Mo. 681, 216 S.W.2d 475. There is only one "due process" clause in each constitution. It is a constitutional provision of universal recognition. All lawyers and judges know what is meant by the term "due process clause," and know where to find it. To refer to the clause by that name is as precise and specific an identification as the giving of the number of the amendment and paragraph or article and section. No uncertainty or indefiniteness is involved. The additional information would be superfluous—wholly unnecessary to a full understanding on the part of the court as to the exact constitutional provision invoked. We cannot brush aside constitutional questions of serious import, fairly and timely raised and properly kept alive, and assume jurisdiction on the pretext that appellant has not raised the point properly, when in the motion to quash and at every conceivable stage thereafter he contended that the statute under which he was being prosecuted was unconstitutional as a violation of the due process clauses of the State and Federal Constitutions. This is not a case of raising the constitutional question as an "afterthought on appeal." See *City of St. Louis v. Butler Co.,* supra, 219 S.W.2d loc. cit. 376.

*State v. Becker,* 268 S.W.2d at 53.

*Becker* was transferred to the supreme court and the constitutional issue determined by that court in *State v. Becker,* 364 Mo. 1079, 272 S.W.2d 283 (1954) *overruled on other grounds, State v. Vollmar,* 389 S.W.2d 20 (Mo.1965). Significantly, the attorney general's motion for retransfer to the court of appeals was denied; the supreme court holding that a valid constitutional issue was presented, thereby confer-

ring jurisdiction upon the supreme court. *See also University City v. Diveley Auto Body Co.,* 417 S.W.2d 107, 109 (Mo. banc 1967).

The rationale of the rule rests upon the need to present an identifiable issue to the court and give the opposing party and the trial court an opportunity to fairly meet and rule the issue. *City of Olivette v. Graeler,* 329 S.W.2d 275 (Mo.App.1959). That rationale was reaffirmed in a very recent case of the Supreme Court of Missouri en banc, *Winston v. Reorganized School District R–2,* 636 S.W.2d 324 (Mo. banc 1982). In that case, a constitutional issue was first raised in general terms and later expanded. The court held that the initial general statement was sufficient to satisfy the rule:

> Accordingly, because the purpose of the rule requiring that constitutional issues be raised at the earliest opportunity, to prevent surprise to the opposing party and permit the trial court an opportunity to fairly identify and rule the issue, was served here, defendant's jurisdictional challenge is denied. *Weir v. State,* 589 S.W.2d 256 (Mo. banc 1979).

*Winston, supra,* at 327.

■ Respondent has raised and preserved his constitutional attack upon the validity of § 168.114. This cause is transferred to the Supreme Court of Missouri, which has jurisdiction of the appeal under Mo. Const. Art. V, § 3.

SHANGLER and CLARK, JJ., concur.

SOMERVILLE, C.J., concurs in part and dissents in part in separate opinion.

KENNEDY, J., dissents.

MANFORD, J., dissents in separate dissenting opinion.

PRITCHARD, J., dissents and concurs in separate dissenting opinion of MANFORD, J.

SOMERVILLE, Chief Judge, concurring in part and dissenting in part.

I respectfully concur in part and dissent in part in the opinion of Dixon, J., to-wit, I

concur that the constitutionality of § 168.-114, RSMo 1978 was adequately raised but dissent as to that part which construes § 536.140, RSMo 1978 as limiting circuit and appellate court review of administrative decisions to matters raised in the petition for review. Such a construction is inconsistent with the clear, plain language of the statute.

MANFORD, Judge, dissenting.

This dissent is filed, not only upon the belief that the majority opinion makes an incorrect disposition of the question of jurisdiction, but for the purpose of discussing what is felt to be other inaccuracies in the majority opinion.

Three specific matters are addressed by this dissent. First, challenge is made to the majority's discussion and disposition relative to the ruling of the circuit court. Second, challenge is made to the majority's disposition concerning the validity of respondent's having raised a constitutional question. The final matter is the submission of an opinion relative to what is believed to be the correct disposition of this appeal.

It first should be noted that the primary question presented by this appeal is whether this court has jurisdiction or whether jurisdiction is vested in our state Supreme Court because respondent allegedly has raised a constitutional question. The majority ultimately rules that issue, but only after a discussion of the propriety of the circuit court's ruling pursuant to § 536.140.-2(5).

For some unexplained reason, the majority elected to discuss, and as a result rule, that the circuit court's action was improper. Because of the inclusion of that issue in the majority, it is necessary for this dissent to respond thereto. There are two reasons why such response is necessary. First, the absence of a response would permit the inference that this dissent agrees with the majority's disposition of the question. A second and more important reason is to point out the erroneous discussion of that issue and the erroneous conclusion reached by the majority upon that issue.

## I. THE RULING BY THE CIRCUIT COURT

The majority opinion assumes and concludes that the ruling of the circuit court, i.e., "The Court is of the opinion that [a] fair trial, as intended by the founders of this country, cannot be had when the same body draws the charges, employs the attorney to present their evidence, and then sits as judge and jury to render a verdict," was "extraneous" *because respondent did not present this question in his petition for review.*

It becomes obvious from reading the majority that the conclusion has been reached that our circuit courts cannot make, or for that matter even consider, the question of whether a petitioner received a fair trial [pursuant to § 536.140.2(5) ] unless the petitioner presents that question to the circuit court.

In support of this position, the majority cites and relies upon *Phipps v. The School District of Kansas City,* 645 S.W.2d 91 (Mo. App.1982). Contrary to the assumption by the majority, and with the acknowledgment that the opinion in *Phipps* is a thorough discussion of circuit and appellate review of administrative decisions, it must be pointed out that *Phipps does not* consider or rule the question presented by the instant case. The ruling in *Phipps* does not even consider the applicability of § 536.140.2(5) in the context as is involved herein. *Phipps does not rule that under § 536.140 a circuit court is prohibited from rendering judgment if the circuit court concludes one or more of the various provisions of § 536.140 are applicable to the disposition of a given case. Phipps does not rule that a circuit court shall not apply the provisions of § 536.140, if applicable, in the absence of such provisions being presented within the petition for review.* The attempt by the majority opinion to apply *Phipps* to the precise question herein is an enlargement of the *Phipps* ruling, neither supported by the rule in *Phipps* nor the rationale upon which the *Phipps* is based.

Not only is *Phipps* misconstrued and misapplied herein by the majority, but if the majority view is adopted as part of our law on this point, the result is an illogical nullification of the expressed intent of § 536.140 as that statute bears application to the review of administrative decisions. Stated another way, § 536.140 expressly authorizes the circuit court to review administrative proceedings to insure constitutional and lawful proceedings. Section 536.140 does not require the prerequisite that the provisions of § 536.140 be set forth in the petition for review. The majority has misread the wording of that section and attempts to secure the adoption of a rule which is contrary both to the expressed wording and certainly to the intent of that section. If the interpretation offered by the majority on this question is adopted as a rule of law, then § 536.140 becomes meaningless and inapplicable except in those cases where a petitioning party specifically and expressly includes one or more of the provisions of § 536.140 within his or her petition for review.

The majority opinion expresses concern over a "gargantuan" review task by our courts. Aside from the fact that expression is nothing more than a mere conclusion by the majority, supported in the majority by neither proof nor analysis, it needs to be pointed out that such a position, if adopted, produces adverse and unwarranted results.

In the first place, such a position would prevent the circuit court from safeguarding the procedural, substantive, and constitutional rights of either or both parties, unless specifically made an issue by the petition for review.

This flies in the face of the statute. The statute, by its very wording, authorizes the circuit court to review the propriety of administrative proceedings and to rule on the question of their propriety. The majority would urge the destruction of such authorization. The result could very well be that a petitioner, upon failing to specifically complain of unfair proceedings in his or her petition, would fall victim to unfair proceedings without recourse to the protection of the courts to safeguard against unfair proceedings. The statute empowers the circuit court to consider *all* factors outlined within the statute for the express purpose of insuring to litigants that proceedings are lawful and proper. The majority opinion urges destruction of this safeguard contrary to both the wording, purpose, and intent of the statute, and against the long-recognized principle that while our courts are rightfully prohibited from participation as an advocate, they nonetheless are charged with the primary responsibility of ensuring fair and lawful proceedings.

The majority opinion expresses great concern that if our courts fail to limit or restrict the circuit court review to only those factors within the petition for review (and thus discard the statute), the task of appellate review will expand. As noted above, the majority fails to support such a conclusion by either fact or analysis. In contrast, it is suggested that if the proposal urged by the majority is adopted, the very "fear" expressed by the majority comes closer to becoming a reality. The reason is quite simple. If, as suggested by the majority, provisions of the statute can only be considered if contained within the petition for review, then it is submitted that *any* party filing a petition for review *could* and *would* be encouraged to include *all* provisions of the statute, whether applicable or not. This would result in the circuit court's having to consider, potentially in each case, each and every provision of the statute. Failure to rule on one or more could lead to expanded appellate court review *not upon the issues joined between the parties, but merely upon the failure of the circuit court to rule a specific provision in the statute.* The result could not only be expanded appellate review, *but relative to disposition of the viable issues between the parties,* appellate decisions could turn upon other issues. The result could be ludicrous.

To the contrary, it is suggested that § 536.140, and more specifically, § 536.140.-2(5), authorizes the circuit court to make disposition of a matter if upon the record, (including the petition for review but not

expressly contingent upon the petition for review as urged by the majority) the circuit court is convinced that the initial disposition was based upon or tainted by unlawful procedure or concluded without a fair trial. This is currently the status of such matters. Section 536.140 expressly prescribes such authority in the circuit court. Contrary to the assertion in the majority that there is no authority where review has considered an issue not contained in the petition for review, this very court in *Merritt v. State Hospital No. 1, Fulton*, 403 S.W.2d 940, 942 (Mo.App.1966) ruled the question.

In *Merritt*, challenge had been made to § 36.390(5) [not § 536.140], and in discussing § 536.140, this court declared the responsibility of the courts in the review of administrative decisions. This court, speaking through Judge Maughmer, held:

Article V, Section 22,[1] The Constitution, V.A.M.S. provides for a direct review by the courts as provided by law of all final decisions, findings, etc. of any administrative body, and that such review shall include a determination of whether the decision is authorized by law and is supported by competent and substantial evidence upon the whole record. *State at the Relation of Bond v. Simmons et al.*, Mo.App., 299 S.W.2d 540, 542. Section 536.140, V.A.M.S. spells out the scope of judicial review. *We must examine the record and determine if the decision complained of (1) is unauthorized by law; (2) is supported by competent and substantial evidence upon the whole record; (3) is the result of unlawful procedure or without a fair trial; (4) is arbitrary or capricious and (5) involves an abuse of discretion.* (emphasis added)

The rule in *Merritt* is not only authority for this issue, but is a sound, logical, and correct interpretation and application of § 536.140 which the majority is determined to destroy. The circuit court herein followed the sound mandate of the rule in *Merritt*.

In conclusion upon this point, it is suggested that neither § 536.140, *Phipps*, nor

*Merritt* declare or even permit the limitation upon our circuit courts, as suggested by the majority. Review by our circuit courts upon such a question, i.e., whether the administrative proceeding has been "made upon unlawful procedures or without a fair trial", *unless* such a question is presented within the petition for review, is a limitation based neither upon logic nor statutory authority or purpose. Such a suggested limitation should be soundly rejected. The action by the circuit court herein was not "extraneous", and this court would be remiss relative to its responsibilities if it so concludes. Section 536.140 empowers our circuit courts to rule, in conformity to the intent of that statute, upon matters critical to the protection of our basic beliefs in fair and lawful proceedings. This court, under the guise of claimed expanded review of administrative proceedings (supported by neither fact nor sound analysis in the majority) should not destroy an expressed statutory safeguard presently entrusted to our circuit courts. That authorization should remain with our circuit courts.

Proceeding from the position that the circuit court was authorized to enter the judgment it did and that such ruling *was not* "extraneous" as suggested by the majority, it is necessary to discuss the error in that judgment. The circuit court judgment is not erroneous because, as suggested by the majority, it was "extraneous." To the contrary, as discussed above, the judgment was within the provisions of § 536.140. The error arises because the circuit court incorrectly interpreted and applied the law. The circuit court ruled that § 536.140.2(5) had been violated and respondent had not been accorded a fair trial because appellant had drawn the charges, employed the attorney to present the evidence, and had sat as judge and jury to render a verdict. The learned circuit judge simply failed to correctly observe and apply the applicable rule of law.

This precise question has been determined by *Harrisburg R–VIII School Dis-*

1. Now Art. V, § 18.

trict v. O'Brian, 540 S.W.2d 945, 950 (Mo. App.1976); Aubuchon v. Gasconade County R–1 School District, 541 S.W.2d 322, 326–27 (Mo.App.1976) and Van Kirk v. Board of Police Commissioners, Etc., 586 S.W.2d 350, 354 (Mo. banc 1979), which declare that where a board is represented by its regular counsel at the hearing, the board acts in an investigatory, prosecutory, and adjudicatory capacity, the proceedings do not unconstitutionally violate due process requirements, and that statutory provisions for removal do not inherently offend the state and federal. constitutions.

*Thus, the ruling by the circuit court was erroneous because of an incorrect interpretation and application of a rule of law, not because the circuit court's ruling was "extraneous" to the proceedings.*

Proceeding further, it is noted that the majority concedes that the finding and order of appellant was supported by substantial and competent evidence. It is the position of this dissent that such concession is the only accurate conclusion reached by the majority and by virtue of its accuracy, this dissent takes no exception to that concession.

## II. QUESTION OF JURISDICTION

Turning to the most viable, and in reality the only real issue in this case, to wit-jurisdiction, this dissent offers up the following as illustrative of why the majority is in error and why, in fact, jurisdiction remains in this court to render final disposition of this appeal.

The majority concludes that a valid timely constitutional question was raised by respondent, thus divesting this court of jurisdiction to decide the appeal.

The majority opinion rests its conclusion upon cited authority which bears discussion. Upon that discussion, it becomes obvious that this cited authority does not support the conclusion of the majority.

The first case cited and thus considered by this dissent is Perez v. Webb, 533 S.W.2d 650, 655 (Mo.App.1976). While not noted in the majority opinion, it is important to reveal that in Perez, it was ruled by this court that a viable or valid constitutional question was not raised. In its reliance upon Perez, the majority further quotes correctly from City of St. Louis v. Butler Co., 358 Mo. 1221, 219 S.W.2d 372, 380[10] (banc 1949) the elements requisite to invoke the jurisdiction of our state Supreme Court. What the majority opinion neglects to include from the Perez decision is the following, which not only restates the applicable rule, but is decisive of the instant case. This court in Perez, after noting the record in that case and after discussing the recognition that the constitutionality of a statute or ordinance is within the permissible scope of judicial inquiry, ruled:

*"A close review of this record discloses that the Respondent did not comply with any of the four requirements to invoke constitutional question, as so clearly delineated in City of St. Louis v. Butler Co., supra."* (emphasis added)

It is submitted that this is precisely what occurred in the instant case. It is not correct, as suggested by the majority opinion, that "[t]he only conceivable defect in the challenge under the ruling of St. Louis v. Butler Co., supra, is the failure to refer to the article and amendment numbers identifying the due process clause."

The requirements to invoke the jurisdiction of our state Supreme Court are four in number as set forth under City of St. Louis v. Butler Co., supra and as restated in Perez, supra. See also City of Green Ridge v. Brown, 523 S.W.2d 609 (Mo.App.1975).

Before considering the failure of respondent to meet the requirements, St. Louis v. Butler Co., supra, it is necessary to reflect upon two other cited authorities by the majority. It is claimed in the majority that under the rule in State v. Becker, 268 S.W.2d 51 (Mo.App.1954) the mere allegation of "vagueness and certainty" under the "due process clauses" suffices. Becker does not so hold. The court in Becker pointed out specifically at 52:

*"In order to preserve a constitutional question for review the question must be raised at the first available opportunity;*

*the sections of the constitution claimed to have been violated must be specified or designated; the question must be kept alive; the point must be presented in the motion for new trial if there is one; and it must be adequately covered in the briefs."* (emphasis added)

The assertion by the majority that a mere claim of vagueness and uncertainty, even with regard to the due process clauses, is not a correct statement even within the authority cited by the majority in support of the assertion.

Finally, as regards the discussion of cited authority in the majority, attention is directed to the case of *Winston v. Reorganized Sch. Dist. R–2, etc.,* 636 S.W.2d 324 (Mo. banc 1982). By the quote selected from *Winston* and placed in the majority, one would think our state Supreme Court has either abandoned or modified the requirements set forth in *St. Louis v. Butler, Perez, Green Ridge,* and even *Becker, supra.* This conclusion is not correct, nor should it even be suggested. What the majority opinion has failed to do is to advise why and how our state Supreme Court reached the conclusion that it had jurisdiction in *Winston.* The reason is specifically given in the *Winston* opinion at 327. In addition to the conclusion quoted by the majority opinion, our state Supreme Court took particular notice and revealed in that case the following:

"While it is true that plaintiff's 'Reply to Defendant's Answer and Motion for Summary Judgment' alleged the unconstitutionality of § 537.600 in general terms ('violative of Plaintiff's rights to due process and equal protection'), plaintiff's *'Reply Memorandum', filed sometime after the reply, but well in advance of entry of judgment, referenced the specific constitutional sections and in narrative form supplied the underlying facts with sufficient particularity to inform defendant and the trial court of plaintiff's contentions."* (emphasis added)

Thus, contrary to the suggestion of the majority opinion that "first mention of a constitutional issue was made in general terms and the court held that the general statement was sufficient" is neither a correct account of the court's ruling in *Winston,* nor does *Winston* hold or even suggest "that a general statement was sufficient". This is patently obvious from the above quoted portion of the court's opinion. Under the facts and circumstances, our state Supreme Court concluded that the plaintiff had *"in narrative form supplied the underlying facts with sufficient particularity to . . ."* *Winston* is neither supportive of the majority opinion nor dispositive of the present appeal.

There is no exception taken to the conclusion by the majority that there is no issue of timeliness. According to the majority, respondent presented the question in his petition for review. Assuming there was a timely presentment, this then directs attention to the petition for review. The following is what respondent says on the subject:

"8. That the said FINDINGS AND DECISIONS of said Board of Education of Moberly Public School District No. 81 are in violation of constitutional provisions in that Section 168.112, Revised Statutes of Missouri, providing that the contract of a tenured teacher may be terminated for 'immoral conduct' is so vague and uncertain as to be unconstitutional; and said vague and uncertain statute deprives the Petitioner of his rights of due process as protected by the U.S. Constitution."

Applying then the rules announced in *Perez, Green Ridge, St. Louis, Becker,* and *Winston,* it is asked: Where are (a) the reference to specific constitutional sections? and (b) a statement of facts with sufficient particularity to advise appellant and the trial court of respondent's contentions? These requisite elements are totally lacking in the instant case.

To more fully determine if the rule under *Perez* and other authority has been complied with, attention then must be focused upon respondent's brief before this court. Under his point III, respondent asserts the following:

"The 'Findings and Decision of the Board of Education of Moberly Public School District No. 81 on Charges Filed Against Robert Ross' are in violation of Constitutional provisions in that Section 168.114, RSMo, is so vague and uncertain that it is void."

There is nothing within either the asserted error (point III) or the argument in support thereof which even hints at compliance with the rule in *Perez* and other authority supra. The respondent does nothing more than assert: "Ross submits that the findings and decision of the Moberly School Board are in violation of constitutional provisions in that Section 168.112, providing that the contract of a tenured teacher may be terminated for 'immoral conduct', is so vague and uncertain as to be unconstitutional; and said vague and unconstitutional statute deprives the Petitioner-Respondent of his rights of due process as protected by the U.S. Constitution."

It is evident from this record that respondent did not meet the requirements to properly invoke the jurisdiction of our state Supreme Court under *Perez* and other authority supra, either at the filing of his petition for review or upon appeal (which would have been untimely); nor did he "preserve the constitutional question throughout for appellate review." *City of St. Louis v. Butler Co.,* quoted in *Perez, supra,* at 655.

The rule announced in *Perez, Green Ridge, St. Louis, Becker,* and *Winston, supra,* must be held to have a purpose and meaning. Our state Supreme Court, in its recent decision in *Winston,* has made it quite clear that such a rule does have purpose and meaning. It is a rule designed to specify and even emphasize the charged constitutional issue in such a manner and with such particularity that all the parties to litigation and the trial court are sufficiently apprised of the claimed issue *and how that claimed issue is directly applicable and related to the factual issue in the given case.* It is not a rule, as suggested by the majority, which can be satisfied by mere allegation or inference to vagueness and

uncertainty, and in addition, merely chargeable as a violation of federal constitutional protections.

To adopt the majority's approach to this issue would be to render void the rule in *Perez* and other authority *supra.* It would further permit the invoking of the jurisdiction of our state Supreme Court on nothing more than general allegations in support of claimed constitutional invalidity.

Respondent herein has not properly complied with the rule in *Perez* and other authority cited supra, and the record herein establishes that fact. He has not properly raised or preserved his constitutional attack, and there is no merit to the suggested transfer of this cause to our state Supreme Court. Transfer should be denied and disposition of this appeal finalized by this court.

### III. OPINION SUGGESTING PROPER DISPOSITION OF APPEAL

As noted above, this dissent, in the third part thereof, includes the submission of an opinion relative to the applicable and correct disposition of this appeal.

This is an action for dismissal of a tenured teacher pursuant to § 168.114.1(2), RSMo 1978. After a public hearing, (§ 168.118, RSMo 1978) dismissal was ordered and the teacher appealed (§ 168.120, RSMo 1978) to the circuit court. The circuit court ruled that the proceedings violated § 536.140.2(5), RSMo 1978, and the teacher did not receive a fair trial. The circuit court ordered the teacher reinstated. The judgment of the circuit court should be reversed and the cause remanded with instructions.

Numerous points are presented, but as a result of the disposition of this appeal, this court considers only one. In summary, that point charges that the circuit court erred in finding that the action of appellant (hereinafter referred to as the Board) denied respondent (hereinafter referred to as teacher) a fair trial because the court concluded that it was unfair for the Board to act as complainant, prosecutor, judge, and jury.

Before reciting pertinent facts and circumstances necessary to full disposition of this matter, this court takes up the above alleged error. Proceedings relative to the dismissal of tenured teachers are statutory. The legislature has specifically provided the grounds for dismissal and the procedures to be followed.[2]

In its findings and conclusions, the circuit court declared that since the Board had acted as Charger of Offenses, the prosecutor, the Judge and jury, the teacher was denied a fair trial within the meaning of § 536.140.2(5). By its ruling, the circuit court committed reversible error. This precise question has been ruled by our courts and it has been declared that where the Board is represented by its regular counsel at the hearing, and the Board acts in an investigatory, prosecutory, and adjudicatory capacity, the proceedings do not unconstitutionally violate due process requirements. *Harrisburg R–VIII School District v. O'Brian, supra.* A like ruling was entered in *Aubuchon v. Gasconade County R–1 School District, supra.* Our courts have ruled that statutory provisions for removal do not inherently offend the state and federal constitutions. *Van Kirk v. Board of Police Com'rs., Etc., supra.*

The judgment entered by the circuit court is directly contrary to sound authority already decisive of the issue. *Harrisburg, Gasconade* and *Van Kirk, supra.* Under this authority, the reasoning applied by the circuit court that the teacher was denied a fair trial and that the Board's action violated § 536.140.2(5) cannot stand. The Board complied with §§ 168.114, 168.116, 168.118 and 168.120 and as a result of such compliance, it cannot be concluded that there was any denial of a fair trial under § 536.140.-2(5).

Review of such proceedings by the circuit court, and in turn by this court, is very narrow and limited. The court's review may extend to the determination of whether action by the Board:

(1) is violative of constitutional provisions;

(2) exceeds the statutory authorization or jurisdiction of the Board;

(3) is insupported by competent and substantial evidence upon the entire record;

(4) is for any other reason unauthorized by law;

(5) is made upon unlawful procedure or without a fair trial;

(6) is arbitrary, capricious or unreasonable; or

(7) involves an abuse of discretion.

Since the circuit court entered its judgment upon (5) above, it set forth no findings of facts or conclusions of law relative to the remaining areas of review. This court has the responsibility to take up the entire matter and enter a final decision. As noted above, this court declares that the circuit court erred in concluding that the teacher was denied a fair trial [(5) above]. In addition, this court finds that there has been no violation of any constitutional provision [(1) above]. *Harrisburg, Gasconade* and *Van Kirk, supra.* The Board had jurisdiction and authority to proceed pursuant to § 168.114, § 168.116, § 168.118 and § 168.120 and the Board complied with these statutes and did not exceed its jurisdiction or authority thereunder [(2) above]. The action by the Board was authorized by the statutes cited above and its action was not such as is unauthorized by law [(4) above]. In finding that the circuit court erroneously declared the teacher was denied a fair trial, this court has provided an answer to (5) above. There is nothing upon the record before this court to support any finding that the Board's action was arbitrary, capricious, or unreasonable, see § 168.114.1(2) [(6) above]. There is nothing upon this record which reveals that the Board abused its discretion, see § 168.114.-1(2) [(7) above].

This court has purposely left for final determination the basis for review numbered (3) above. Since this matter is before

---

2. § 168.114—Grounds for Termination; § 168.-116—Termination, Notice, Charters; § 168.118 —Termination Hearing, Procedure and Costs; § 168.120—Appeal by Teacher; Procedure.

this court and there is a full and complete record, the issue of whether the Board's decision is supported by competent and substantial evidence must be addressed. For a decision upon this issue, pertinent relevant facts must be recited. Upon disclosure of those facts and the court's disposition, the question of whether the Board's decision was arbitrary, capricious or unreasonable [(6) above] and whether the Board abused its discretion [(7) above] will be answered.

The Board filed formal charges against the teacher pursuant to § 168.114.1(2), charging the teacher with immoral conduct. A notice of a hearing required and in compliance with § 168.116(3) was also served upon the teacher. Pursuant to § 168.-116(3), the teacher requested a hearing. A public hearing was conducted, which commenced the evening of January 10, 1980 and ended on January 12, 1980. The parties were permitted to and did submit briefs and suggestions to the Board. In summary, the charges filed against the teacher, seven in number, were:

(1) While conducting a carpentry class on or about October 12 or 13, the teacher permitted the only female student of the class to be harassed by the male students with questions of how much money she would take for sexual favors; and when she, in exasperation, replied $150.00, the teacher took out two $100 bills from his billfold and offered them to her.

(2) In the month preceding the hearing, the teacher, while alone with the female, grabbed her, hugged her, put his arm around her, and pinched her.

(3) About a month prior to the hearing, the teacher permitted a centerfold from Playboy magazine to remain on the wall of the classroom in full view of the students in his class, then let it be taken to a carpentry job site away from the school.

(4) At various times, the teacher permitted, in his presence, male students to subject the female student to sexual harassment.

(5) In September, 1979, while the teacher was present, male students handed the female student a plastic substance in the form of a phallus, which was also displayed in a sexually suggestive manner by one of the male students to the female student. This object was later discovered by the female student in her work pouch. The teacher displayed the plastic phallus to other teachers and treated the matter as a joke, and at no time took any action to indicate his disapproval of such to the class.

(6) Two weeks prior to the hearing, the female student was, by a male student, interrogated about her sexual behavior and about how many guys she had performed sexual relations with; and this same male student declined to plug in a heater at the request of the female student unless she performed a sexual act upon him. It was charged that the teacher was in the vicinity of the male and female student during this exchange.

(7) On December 11, 1979, someone brought to class a pornographic eight-track cassette to the classroom and played it in the presence of the female student. The teacher entered the room, ordered the tape turned off, but did not confiscate the tape or reprimand those responsible.

In support of the foregoing charges, eight witnesses appeared. At the close of the teacher's evidence, one of these eight witnesses appeared as a rebuttal witness. In summary, these eight witnesses testified to the following:

The first witness was a fellow teacher who stated that the teacher displayed the plastic phallus in the teachers' lunchroom area in a joking manner. This witness testified that the teacher (respondent) stated, "Look what the boys gave to Pam." (the female student) The statement from this witness disclosed that the teacher (respondent) had taken no action with respect to anyone involved in the incident. He also testified that the object was again viewed by him when it was removed from the teacher's (respondent's) desk after the teacher (respondent) was suspended. The object contained the initials P.A.M.

This testimony was followed by that of the female student. In summary, she stated that she was the only female student in the class. She also stated that on one occasion, she was being harassed by male students concerning what she would charge for her sexual favors. Out of exasperation, she told the male students it would cost more than they could put together, or $150.00. At this point, she said that the teacher responded by pulling two $100 bills from his wallet and handed them to her, saying, "here" or something to that effect. She added that the teacher on occasion had put his arm around her and once, had hugged her and pulled her to him. She advised that on this latter occasion, the teacher stated, "I am going to have to quit doing this or else I am going to get myself in a lot of trouble", or words to that effect. On another occasion, the female student stated, the teacher pulled her to him and this was observed by a male student who, while witnessing the act, stated, "Go on Bob (referring to the teacher), we won't say anything." This female student also testified to the display of the plastic phallus, the photograph of the nude female from the magazine and the pornographic tape. She stated that she was harassed continually by the male students, often in the presence of the teacher, and he took no action to correct the matter or to prevent it.

The testimony of the female student was followed by that of two male students. The first male student stated, in summary, that the nude photograph was displayed on the wall of the classroom. When the teacher entered the room, he observed the photograph, inquired who put it on the wall, but did not remove it. This student also testified that the nude photograph again appeared at a job site away from the school. This student stated that the teacher then tore the photo down, wadded it up and threw it on the floor. The female student had testified that the teacher had folded the photo and placed it in the rear pocket of her work clothes. The male student stated that he did not observe this. The evidence reveals that this photo was later discovered by the mother of the female student at her home. The male student testified to having observed the teacher, two or three times, placing his arm around the shoulder of the female student. This student also testified concerning the occasion involving the two $100 bills, but stated that he heard the teacher say to someone that he was going to teach her a lesson. He stated that as a result of the harassment and the presentment of the two $100 bills, the female student was shocked. He stated that he and other male students were also shocked. It was this witness's statement that the terms "circle jerk" and "gang bang" were used by the male students toward the female student, and those terms were used in a loud-enough tone so the teacher could have heard them. This student also acknowledged the presence and display of the plastic phallus. He added that another male student unzipped the fly of his pants and placed the plastic phallus therein, and then suggestively displayed it toward the female student. This, according to this witness, occurred a distance of about 1½ feet from the teacher's desk.

A second male student was called to testify. In summary, he stated that he observed the teacher with the two $100 bills, but did not hear the teacher say anything. In addition, he stated that the female student had been the subject of sexual harassment, but no more than any other student. He also testified that he had not observed the teacher reprimand or correct the students. This student testified to having seen the plastic phallus one time, but could not say whether or not the teacher knew of it.

The female student's mother was called and stated that she found the nude photo on a bookshelf in her daughter's bedroom. She confronted her daughter who stated that the teacher had put the photo in the rear pocket of her work clothes, she forgot it, when she returned home she found it in the pocket and threw it on the shelf. Upon inquiry by the mother, the girl advised her mother of the other events to which she testified at the hearing.

Other evidence in support of the charges came from school administrators. This tes-

timony included the procedures followed regarding evaluation of teachers, conferences conducted with the teacher, the recommendation that the teacher resign and opinions that the administrators felt the teacher's conduct was unprofessional and that his continued teaching in the district was not in the best interest of the district.

The teacher denied the charges. Concerning the incident with the two $100 bills, he testified that he was trying to teach the female student a lesson and intended no immoral conduct toward the girl. In addition, he testified that he tore the nude photo from the wall of the classroom, put it in a wastebasket, and knew nothing more about it. In addition, he testified that he did display the plastic phallus to fellow teachers, but disclaimed any joking or lack of seriousness of the matter. He added that he threw the phallus in the trash and knew nothing further about it. He disclaimed any knowledge of the conversation between the female student and the male student in which a sexual act was requested, but stated he observed the girl hit the male student. He stated that he inquired about the matter, called the boy to one side and then made him sit on the school bus as a reprimand. He said that he never observed or was ever aware of the obscene or suggestive display of the phallus. He disclaimed hearing anything on the pornographic tape, but was aware that a tape was being played and ordered it turned off. He testified that he had never had physical contact with the female student. He also testified that on several occasions, he had to order the girl from the inside of the cabs of cement and service trucks, which from time to time, were parked at the job site. It was the teacher's testimony that when the occasion arose, he would and did reprimand the students. It was his position that while he might have exercised poor judgment, he did nothing immoral in his relationship with his students.

The teacher called three students. In summary, these students testified that the incident involving the two $100 bills was action by the teacher to teach her a lesson. They testified that the teacher tore down the nude photo and took the plastic phallus out of the classroom. They also stated that the teacher reprimanded the class members for their use of vulgarity. They stated that they never observed any improper physical contact between the female student and the teacher, and added that the teacher did not observe any obscene or suggestive display of the phallus by one of the male students. The female student had identified one of these male students as the one who told the teacher when he (the teacher) placed his arms around her, "Go on Bob, we won't say anything," but this student testified that he never observed the claimed incident or made that statement.

Three additional adult witnesses testified to the character of the teacher.

The first male witness called reappeared as a rebuttal witness, and was quizzed about the reprimand of a male student over a matter not involving the female student and the time factor surrounding the nude photo. The evidence closed, the parties filed their briefs and suggestions and after deliberation, the Board ordered the dismissal. The teacher filed his petition for review. The circuit court reversed the Board's ruling and this appeal followed.

It must be noted that the record reflects that none of the witnesses displayed any personal animosity or ill will against the teacher.

It must be noted that respondent attempts to present a constitutional argument. This attempt fails, however, because of respondent's failure to properly reference what, if any, constitutional provisions he claims are involved. Neither in his petition for review nor upon this appeal has respondent properly raised or preserved any constitutional question. As was stated by this court in *Perez v. Webb, supra,* at 655, quoting from *City of St. Louis v. Butler Co., supra,* at 219 S.W.2d 380[10], the rules are stated:

" 'To invoke our jurisdiction on the ground a constitutional question is involved a party must follow four requirements. 1. He must raise the constitution-

al question at his first available opportunity; 2. *he must designate specifically the constitutional provision claimed to have been violated, such as by explicit reference to the Article and Section or by quotation of the provision itself; 3. he must state the facts showing such violation; 4. he must preserve the constitutional question throughout for appellate review.'*" (emphasis added) See also *City of Green Ridge v. Brown, supra.*

*Perez* and *City of Green Ridge* find direct application to and are controlling upon the question of respondent's alleged constitutional argument. Such constitutional challenge was not properly raised or preserved and is not reached in this opinion.

As pointed out above, review by this court is limited to determining if the ruling of the Board is supported by competent and substantial evidence. Neither the circuit court nor this court can substitute its judgment for that of the Board. *Bd. of Ed., Mt. Vernon Schools, Etc. v. Shank,* 542 S.W.2d 779 (Mo. banc 1976); *Willis v. School Dist. of Kansas City,* 606 S.W.2d 189, 194 (Mo. App.1980); *Conder v. Board of Directors of Windsor Sch.,* 567 S.W.2d 377 (Mo.App. 1978); and *Abbott v. Civ. Serv. Com'n of City of St. Louis,* 546 S.W.2d 36 (Mo.App. 1976).

The record reveals that the Board has complied with the statutory requirements regarding its jurisdiction and authority to address the matter of dismissal of tenured teachers. In addition, the record reveals that the Board made extensive findings of fact and conclusions of law in support of its ruling as required by the statute.

It should be the decision of this court that there is competent and substantial evidence upon the whole record to support the ruling of dismissal ordered by the Board. It should be found that the action by the Board was not arbitrary, capricious, or unreasonable because the same was based upon competent and substantial evidence. There is no showing of any abuse of discretion by the Board. The judgment of the circuit court should be reversed and this cause remanded to the circuit court with instructions to the circuit court to enter judgment affirming the decision and order of dismissal issued by the appellant, Board of Education.