Henry C. PHELPS, Plaintiff-Appellant,

v.

The METROPOLITAN ST. LOUIS SEWER DISTRICT, Robert S. Flick, Appointing Authority, Edward G. Wiegers, Acting Personnel Director, and Owen Rush, Kennard O. Whitfield and John C. Vogel, Members of the Civil Service Commission of the Metropolitan St. Louis Sewer District, Defendants-Respondents.

No. 41044.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 11, 1980.

Gray & Stewart, John B. Gray, Clayton, for plaintiff-appellant.

Edward G. Wiegers, Thompson & Mitchell, Donald J. Stohr, Carol E. Jackson, St. Louis, for defendants-respondents.

PUDLOWSKI, Judge.

This is an appeal from the order of the circuit court of St. Louis County, the Hon. Edward L. Sprague presiding, affirming the decision of the Civil Service Commission of the Metropolitan St. Louis Sewer District to demote Henry C. Phelps. We reverse.

Phelps was a senior treatment plant operator at the Metropolitan St. Louis Sewer District's Bissell Point Treatment Plant. He and his crew arrived early, as was the custom, for the midnight shift of July 16, 1975, to be briefed on plant conditions. During the briefing session, it was discovered an emergency existed at the plant. Water was overflowing the ash sumps and into the dry wells.

To correct the situation, Phelps first tried to get the ash pumps started, but his efforts were unsuccessful. Phelps ordered the incinerators and filters shut down. He then tried to turn the water off. But a leak in the air lines which controlled the flow of water made this impossible.

Phelps called Carl Marciante, the operations supervisor, and told Marciante that the pumps would not start and informed him about his efforts to correct the situation. By this time the water had overflowed the dry wells and had reached the incinerator. Marciante ordered Phelps to call an electrician to get the pumps started.

The electrician arrived and checked the electrical panels. After inspecting the panels, the electrician decided everything was in order. However, before he would start the pumps, he wanted the permission of his supervisor, Morris Wright, because the pumps were under water.

Wright, who was in charge of maintenance and mechanical repair, came down to the plant and took over the supervision of the pumps. Since Phelps' arm was in a sling, he could do very little to aid in setting up the pumps. He therefore decided to explore for the leak in the air lines.

About three hours after the emergency began, Phelps' crew began to migrate to the lunchroom to take a break. By this time everything was under control. The crew was eating and resting in the lunchroom, waiting for the remaining water to be pumped out before cleanup operations could begin.

Several days after the incident Phelps was charged with neglect of duty. It was asserted that Phelps showed lack of leadership by allowing his men to remain in the lunchroom for several reasons. First, it was contended that if an emergency existed while his men were in the lunchroom, his crew should not have been taking a break. If, however, the emergency was over, his crew should have been resuming plant operations. Second, it was contended that plant policy requires that breaks be staggered among the crew and that all the crew were taking a break at one time. Third, it was charged that plant policy requires that an operator be on the filter floor whenever a filter is turning and that a filter was turning unattended in violation of plant policy. Fourth, it was contended that Phelps showed lack of leadership by allowing a portable pump to be unattended. It was asserted that the situation required that the pump be attended at all times because it could have "tripped out," causing new flooding. Finally, it was charged that Phelps' concern for plant operations was secondary to permitting his operators time for eating. It was contended that when Wright approached Phelps about sending someone down to attend the portable pump, Phelps' reply, "But they are all eating," evinced lack of concern for plant operations.

Phelps was subsequently demoted and he appealed to the Civil Service Commission of the Metropolitan St. Louis Sewer District. The Commission heard his case and affirmed his demotion. Phelps then appealed to the circuit court of St. Louis County. His demotion was again affirmed. He now appeals to this court.

Appellant contends that he was denied due process of law because he was required to go forward with his evidence and refute

the charges against him before the appointing authority,[1] who was seeking appellant's demotion, presented the appointing authority's case before the Commission.

Phelps was a classified employee at the Metropolitan St. Louis Sewer District protected by that agency's Civil Service Rules and Regulations. One of the purposes of the rules is to place appointments and demotions on principles of merit and fitness. Metropolitan St. Louis Sewer Dist. Civil Serv. Rule 2.1(b) (1972). Accordingly, "[a]n appointing authority may demote any classified employee under his direction when in his opinion the employee is incapable of performing adequately the duties of his current position . . ." or when his work has been unsatisfactory. Metropolitan St. Louis Sewer Dist. Civil Serv. Rules 6.2(a); 11.6(c)(3) (1972). These rules give a classified employee title to his office and protect him from demotion for any reasons except those reasons specified in the Civil Service Rules and Regulations. To vindicate these rights the rules provide that any aggrieved employee may "appeal" his demotion to the Civil Service Commission of the Metropolitan St. Louis Sewer District. Metropolitan St. Louis Sewer Dist. Civil Serv. Rule 15.-2(a)(1) (1972).

■ Since the "appeal" provided for by Metropolitan St. Louis Sewer Dist. Civil Serv. Rule 15.2(a)(1) (1972) is the first adversary proceeding between the parties, it is not technically an appeal but an original proceeding. Because the "appeal" is an original proceeding, the party or agency seeking the removal of a classified employee has the burden of proving the employee's acts or omissions justify his removal from office. Due process requires that the party or agency seeking removal put on its case first. *State ex rel. Bernsen v. City of Florissant*, 588 S.W.2d 194 (Mo.App.1979); *Heidebur v. Parker*, 505 S.W.2d 440 (Mo. App.1974). The appointing authority had the burden of proving Phelps' demotion was justified, and therefore the appointing authority should have presented his case first.

Appellant also claims, inter alia, (1) the findings of the Civil Service Commission of the Metropolitan St. Louis Sewer District are not supported by competent and substantial evidence upon the whole record, (2) the decision of the Commission is arbitrary, capricious and an abuse of discretion and (3) the circuit court erred by denying appellant an opportunity to introduce new evidence on his behalf.

■ Our review of the administrative adjudication is limited. Under the Civil Service Rules and the Missouri Administrative Procedure Act, we are not a fact finding body. The law vests the fact finding function in the agency. St. Louis Metropolitan Sewer Dist. Civil Serv. Rule 15.2(b)(1) (1972); § 536.090, RSMo 1969.

■ In determining whether the facts found by the agency are supported by substantial evidence upon the whole record, our review is limited to a determination of whether a reasonable mind could have conscientiously reached the same result based on a review of the entire record. Thus if the evidence before an agency would warrant either of two opposed findings, an appellate court must uphold the agency's factual determinations. *Board of Education v. Shank*, 542 S.W.2d 779 (Mo. banc 1976). In determining whether a reasonable mind could have conscientiously reached the same result on a review of the entire record, we look to see whether the agency's findings of fact are supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind would except as adequate to support a conclusion. *Hermel, Inc. v. State Tax Comm'n*, 564 S.W.2d 888 (Mo. banc 1978). In the area of credibility of witnesses, we give deference to the agency's findings because the agency is best able

---

1. The appointing authority is defined as "[a]n officer or group of persons having authority under the [Charter of the Metropolitan St. Louis Sewer District] to make appointments to positions . . . ." Metropolitan St. Louis Sewer Dist. Civil Serv. Rule 1.2 (1972). Appointments include promotions as well as demotions. Metropolitan St. Louis Sewer Dist. Civil Serv. Rule 1.3 (1972).

to judge the demeanor and conduct of the witnesses before it. *McCallister v. Priest*, 422 S.W.2d 650 (Mo. banc 1968).

It has traditionally been considered in determining whether the decision of the Commission is arbitrary and capricious or an abuse of discretion that our scope of review is even more limited than under the substantial evidence test. See *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) (Harlan). However the difference between the substantial evidence test and the arbitrary and capricious test is an uncertain subject. K. Davis, Administrative Law of the 70's § 29.00 (1976).

However since on remand the burden of proof will rest with the appointing authority, we do not know what facts the Commission will find and what decision the Commission will make. Therefore it is unnecessary for us to decide these assignments of error. It is also unnecessary for us to decide whether appellant was improperly denied an opportunity to present new evidence at the circuit court level because appellant will have an opportunity to present his evidence before the Commission should the appointing authority decide to prosecute his case anew.

Reversed and remanded to the Civil Service Commission of the Metropolitan St. Louis Sewer District for proceedings not inconsistent with this opinion.

GUNN, P. J., and STEPHAN, J., concur.