Adrienne D. McKENNA, Superintendent
of Marshall Habilitation
Center, Appellant,

v.

PERSONNEL ADVISORY BOARD of the
State of Missouri, Carl Burton Day,
John L. Petersen, Agnes M. Conrad,
Jack C. Kendrick, Jr., Susan B. Breshears, and Donita K. Faubion, Respondents.

No. WD 36679.

Missouri Court of Appeals,
Western District.

Dec. 24, 1985.

William L. Webster, Atty. Gen., Mary Stewart Tansey, Asst. Atty. Gen., Jefferson City, for appellant.

Norman W. Lampton, Columbia, for respondent Conrad.

Dale C. Doerhoff, Jefferson City, for respondents Day, Petersen, Kendrick, Breshears and Faubion.

Before SOMERVILLE, P.J., and PRITCHARD and BERREY, JJ.

BERREY, Judge.

This is an appeal by the Superintendant of Marshall Habilitation Center from a judgment of the Cole County Circuit Court which affirmed the decision and order of the Personnel Advisory Board which rein-

stated employees with back pay who had been previously dismissed. This court affirms.

The facts are these:

Adrienne McKenna, the superintendant of the Marshall Habilitation Center (MHC) and the Appointing Authority,[1] testified she hired a private investigator named Mike Ehly from Commercial Investigators located in Kansas City to investigate suspected abuse in Cottage 5 of MHC.

The residents of Cottage 5 are mentally retarded adult males. The residents are assigned to Cottage 5 because they have exhibited severe aggressive behavior toward the staff and other residents. Some residents have suicidal tendencies and others possess a predilection to sexual assault. In addition, several residents are unable to communicate. Although these men do not possess normal mental capabilities, they are physically normal. Many have normal adult male builds and heights.

Mr. Ehly was hired as a regular employee in the position of Hospital Attendant I for Cottage 5. Like all new employees, he received a three week training course at MHC to learn how to handle the residents. One particular technique taught in the course was Physical Crisis Intervention (PCI) which is a physical control manuver used when a resident becomes aggressive. David Cott, a Unit Director at MHC, noted that PCI could not be applied in every situation to ward off a physical attack. This is especially true where a resident makes a head-on attack with arms and fists flying.

Mr. Ehly was assigned the 2:00 p.m. to 10:00 p.m. shift for approximately two months. During his investigation he would jot down notes during the shift and after work hours at MHC he would develop these notes into reports. At McKenna's request these reports were then sent to Commercial Investigations in Kansas City. From Kansas City the reports were then forwarded back to McKenna. McKenna

testified that at times it was a couple of weeks before she would receive a "batch of reports." Mr. Ehly did not make immediate reports through the normal supervisory channels even though the statutes and MHC rules require reporting patient abuse immediately to a supervisor.

As a result of Mr. Ehly's investigation, six employees, the respondents, were charged with a total of thirteen incidents of client abuse. Each of the employees explained or denied the incidents as reported by Mr. Ehly. Particular incidents or charges will be further developed in the opinion as needed.

All six employees were terminated by Superintendant McKenna. The employees appealed to the Personnel Advisory Board (P.A.B.) pursuant to § 36.390, RSMo Supp. 1984. The P.A.B. determined the dismissals were groundless and reinstated the employees with back pay. The circuit court of Cole County affirmed the board's decision and the superintendant appeals.

Appellant's first contention is that the circuit court erred in affirming the P.A.B.'s decision because the board applied an incorrect standard of proof. In its conclusion of law the P.A.B. specifically found:

> That the allegations and charges made against Appellant's [Respondents here on appeal] Day, Peterson, Conrad, Kendrick, Breshears and Faubion were not substantiated by competent and substantial evidence having been totally without corroboration, the Board now concludes that the Appointing Authority's action in dismissing these Appellants from their employment was not for cause and was not for the good of the service.

Appellant isolates the board's language, "substantial and competent evidence," and asserts the board placed a heavier burden of proof on the appellant than is required.

■ This court cannot disagree with appellant that "competent and substantial evidence" are terms of art used to describe the scope of judicial review of an adminis-

---

1. The "Appointing Authority" is defined in § 36.020(1) RSMo Supp.1984, as "an officer or

agency subject to this law [state personnel law] having power to make appointments."

trative decision. § 536.140, RSMo 1978; *Hermel, Inc. v. State Tax Commission,* 564 S.W.2d 888, 894 (Mo. banc 1978). The use of these terms of art, however, is not fatal to the board's decision and order.

■ First, the board's mistaken use of this language did not necessarily mean the board intended to use a scope of judicial review as the burden of proof. As noted in *Citizens State Bank v. State Banking Bd.,* 602 S.W.2d 895, 897 (Mo.App.1980), this court cannot demand the "precise terminology courts strive for" from an administrative board like the Personnel Advisory Board.

■ This court interprets the board's conclusion to mean the appellant did not satisfy her burden that the dismissal was justified, *See Phelps v. Metropolitan St. Louis Sewer District,* 598 S.W.2d 163 (Mo. App.1980); *Tonkin v. Jackson County Merit System,* 599 S.W.2d 25 (Mo.App. 1980) because the appellant failed to produce evidence which is "more worthy of belief than that offered in opposition." *Price Brothers Lithographic Co. v. American Packing Co.,* 372 S.W.2d 138, 146 (Mo.App.1963), *rev'd on other grounds,* 381 S.W.2d 830 (Mo. banc 1964). In essence, the appellant failed to prove her case by the greater weight of the credible evidence. *See Miller v. Watkins,* 355 S.W.2d 1, 2 (Mo.1962); *Highfill v. Brown,* 320 S.W.2d 493, 497 (Mo.1959).

■ Secondly, if the board had indeed attempted to use "substantial and competent evidence" as the administrative standard, then it would have been to the appellant's advantage. Substantial evidence has been defined as:

> [E]vidence which, if true, has probative force upon the issues, i.e. evidence favoring facts which are such that reasonable men may differ as to whether it establishes them. It is evidence from which the trier or triers of fact reasonably could find the issues in harmony therewith; it is evidence of a character sufficiently substantial to warrant the trier of

facts in finding from it the facts to establish which the evidence was introduced. *Reproductive Health Services, Inc. v. Lee,* 660 S.W.2d 330, 335 (Mo.App.1983). The Supreme Court recognized substantial evidence "is something less than the weight of the evidence...." *Consolo v. Federal Maritime Commission,* 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966). Therefore, assuming *arguendo* that the substantial evidence standard was in fact used, the P.A.B. determined the appellant's proof did not even rise to the level where the trier of fact could have established the facts for which the evidence was introduced. Hence, the appellant certainly did not establish its case by the greater weight of the evidence.

Appellant further contends the P.A.B., in error, placed a heavier burden on the appellant by requiring a showing of physical injury or mental trauma as corroborative evidence of patient abuse. Appellant points to the finding of fact No. 24 which states:

> In all of the cases which were reported to the Superintendant which alleged abuse by the Appellants, [Respondents here on appeal] there was no corroborative evidence of physical trauma inflicted upon any of the Appointing Authority's clients. The incidents reported by the private investigator did not lead to any physical examination of the alleged victim by the medical authorities.

■ This language cannot reasonably be construed as requiring corroborative evidence in the nature of physical or mental trauma to establish patient abuse. The P.A.B. is merely disclosing facts which bear on the credibility of the reports and testimony of Mr. Ehly, the private investigator. This finding, although not required in every case, obviously was one factor along with the other evidence presented at the hearing which aided the board in finding that appellant did not meet the burden of proving the cause for dismissal.

Appellant's next contention is that the P.A.B. arbitrarily disregarded the disputed testimony of Mr. Ehly concerning several

of the charges against the respondents. Appellant alleges that the P.A.B. failed to make specific findings that Mr. Ehly's testimony was incredible and disbelieved by the board and, that, therefore, the evidence may not be ignored. *Missouri Church of Scientology v. State Tax Commission,* 560 S.W.2d 837, 843–844 (Mo. banc 1977), *appeal dismissed,* 439 U.S. 803, 99 S.Ct. 57, 58 L.Ed2d 95 (1978). An examination of the charges in question will reveal this contention is without merit.

Mr. Ehly testified that on June 13, 1983, that John L. Peterson allowed one resident to take another resident into the timeout room—a small padded room which is used to modify the client's aggressive behavior. It was established that this room is to be used only under the orders of a doctor or a qualified mental retardation professional. The board found that:

> With respect to the allegations against Appellant Peterson that ... he allowed a client to place another client in the time-out room ... the Board finds after considering all the evidence and the demeanor of the witnesses that the appointing authority has not established by competent and substantial evidence that Appellant Peterson did perform [this] action as alleged and charged.

This finding tells the reviewing court that Mr. Ehly's testimony could not be entirely taken at face value and that in the board's opinion the alleged act did not constitute neglect or abuse.

Mr. Peterson testified that he did not physically stop the client from escorting the other client to the timeout room because at that particular instant he was trying to calm down another client who was "getting physically violent in his bedroom by hitting the head board of his bed with his fists while he was laying on the bed." Mr. Peterson further stated he verbally warned the client of the consequences of his actions. Mr. Peterson stated that Mr. Ehly sat idly by and did not help him in either situation.

■ In the instant case there is substantial and competent evidence in the record that this incident did not rise to the level of patient neglect or abuse. This court is bound by the administrative determination when the evidence would support either of two opposed findings, i.e., patient neglect and abuse or no patient neglect and abuse. *Morris v. Division of Probation and Parole,* 651 S.W.2d 545, 545–46 (Mo. App.1983). Furthermore, this court must defer to the agency when speaking of the credibility of witnesses because the agency is best able to judge the demeanor and conduct of the witnesses before it. *Phelps, supra,* at 165–66.

■ Similarly, appellant erroneously asserts the P.A.B. disregarded the uncontroverted testimony of Mr. Ehly in which he asserted two employees threw a footstool at a client and watched him become more agitated. One of the two employees charged was respondent Donita Faubion. Evidence revealed the footstool in question was in fact a foam-filled cushion weighing about one pound. Both employees testified that the client in question was upset and in an attempt to divert his attention they decided to play catch with him. Because MHC does not provide balls for play, the employees used the foam-filled cushion as a substitute. They both stated that they neither taunted him or felt he was becoming more distraught. This court finds the P.A.B. was neither arbitrary or capricious in finding:

> With respect to the allegations against Appellant Faubion ... that on July 9, 1983, she threw a light weight cushion/pad article at a resident repeatedly, it is found the Appointing Authority has not established by competent and sbustantial evidence ... that the incident of July 9, 1983, consisted of an aborted attempt by Appellant Faubion and another employee to distract a resident who was in an agitated state by trying to initiate a game of "catch" with that resident, using the only article at hand, being a light weight and harmless cushion.

Appellant further censors the board's findings of fact and contends finding No. 30, which states, "that on July 25, 1983, she [Susan Breshears] falsely reported that she had properly dispensed medication to a client when she had not done so, ... is found by the Board ... not substantiated by the Appointing Authority through competent and substantial evidence," is incorrect and cannot stand.

Breshears was charged with giving a controlled medication (Valium) four hours prior to the scheduled time in violation of the medical procedure which allows no medication to be administered more than one hour before the scheduled time.

Respondent Breshears testified the client's prescription read "Valium TID" which means the Valium may be taken three times a day with no particular time designation. She stated TID at MHC was 8:00 a.m, 12:00 p.m. and 4:00 p.m. unless changed by an order of a doctor. There is no evidence in the record contradicting this fact. On the particular day in question, this client was unusually aggressive and Breshears gave the client the Valium at 4:00, according to medical guidelines. Breshears testified because she was leaving early that day, she called her supervisor to report she had given the client his Valium.

Although the board incorrectly stated the appellant asserted Breshears falsely reported that she properly dispensed medication, the appellant did allege that Breshears had improperly administered Valium to resident of MHC. It is apparent from the P.A.B.'s findings it did not believe Breshears had committed such an act. The evidence from the record supports the board's position and the minor deviation did not detract from the crux of the charge.

■ Concededly, Mr. Ehly's reports and testimony are uncontradicted in that three of the six respondents have been observed eating left over food. There are several surrounding factors, however, which reveal this violation of employee policy is not as egregious as first supposed. First, all the respondents charged testified they consumed only the food which was left by the residents after they were finished. This food was then no longer client food, and in fact could be characterized as garbage. Secondly, there was testimony that over two-thirds of the first line supervisors failed to enforce the policy against eating client's food. This court agrees with the board that such action cannot be the basis in dismissing the Respondents for cause.[2]

■ Finally, appellant alleges that because two employees, Faubion and Kendrick, could not remember, and therefore deny, two of the incidents of abuse reported by Mr. Ehly, the board arbitrarily disregarded uncontroverted evidence. It must be re-emphasized that the matter of credibility of witness is left within the sole discretion of the administrative agency. *McCallister v. Priest*, 422 S.W.2d 650 (Mo. banc 1968); *Phelps, supra*, at 165–166. The P.A.B. in its statement concerning these allegations said it "considers the private investigator's point of view in reporting these alleged incidents." This finding was an implicit credibility finding that did not leave the reviewing court to speculate as to what part of the evidence the board believed and found to be true and what part it rejected. *Glasnapp v. State Banking Board*, 545 S.W.2d 382, 387 (Mo.App. 1976); *Century State Bank v. State Banking Board*, 523 S.W.2d 856, 859 (Mo.App. 1975).

Many of these incidents reported by Mr. Ehly were left to stand on their own merit without any other supporting evidence. This court previously noted that it is unnecessary to make a showing of physical inju-

---

2. The inordinate amount of testimony over this subject calls to mind the action and testimony of Captain Queeg in "The Caine Mutiny."

According to MHC employee policy contained in a memo by Adrienne McKenna, a violation of an administrative rule which does not specify a penalty, i.e., eating client food, requires three separate offenses with corresponding progression of disciplinary action before complete termination. With respect to this charge, the appointing authority failed to follows its own guidelines.

ry or mental trauma as corrobative evidence of patient abuse. Nevertheless, the lack of corroborative evidence of any particular nature in the instant case shores up the respondent's position that the investigation was not executed according to the required procedures. This is a most critical issue in the case.

The legislature has set forth procedures to investigate suspected patient abuse and the proper course to pursue the necessary disciplinary action. Section 630.167, RSMo Supp.1984. Subsection 1 of § 630.167 provides that "[u]pon receipt of a report, the department shall initiate an investigation within twenty-four hours." If after the investigation reveals a likelihood of patient abuse or neglect, a report should then be submitted to the director of the department. § 630.167.2.

Dr. Charles P. Barberee, the acting medical doctor of MHC as well as Adrienne McKenna testified that reports of abuse are to be reported up the chain of command to the director and that the doctor should be promptly notified so he can examine the patient for evidence of physical or verbal abuse.

None of the statutes, regulations or in-house procedures were followed in the instant case. McKenna testified that it took as long as two weeks to receive the written reports from Mr. Ehly.[3] It is essential in our system of justice that statutes and regulations are followed punctiliously. *Schwartz v. Federal Energy Regulatory Commission,* 578 F2d 417, 420, 188 U.S.App.D.C. 175 (D.C.1978). *See Derrickson v. Board of Education,* 703 F2d 309, 315 (8th Cir.1983). The Supreme Court has further noted that agencies must comply with their own internal procedures. *Morton v. Ruiz,* 415 U.S. 199, 235, 94 S.Ct. 1055, 1074, 39 L.Ed2d 270 (1974).

Judgment affirmed.

All concur.

**3.** Dr. Barberee recognized an examination of a patient after such length of time would be worthless. If there had in fact been any injury

to a resident, the superintendant would have been seriously derelict in her duty by using this method of investigation and report.