Anthony COLLIER, Plaintiff-Appellant,

v.

**METROPOLITAN ST. LOUIS SEWER DISTRICT, et al.,
Defendants-Respondents.**

**No. 49793.**

Missouri Court of Appeals,
Eastern District,
Division Three.

March 4, 1986.

Charles R. Oldham, St. Louis, for plaintiff-appellant.

Anthony E. Cassimatis, James W. Erwin, St. Louis, for defendants-respondents.

KAROHL, Presiding Judge.

This is an appeal from the decision of the Circuit Court of the City of St. Louis in a Chapter 536 RSMo 1978 proceeding. The trial court sustained the disability discharge of appellant Collier affirmed by the Civil Services Commission of the Metropolitan St. Louis Sewer District (MSD). Collier was discharged pursuant to MSD Civil Service Rule 11.5. MSD is a municipal corporation existing by virtue of law and statutes of the State of Missouri. We affirm.

Appellant first claims the circuit court erred in upholding the Commission's findings that MSD had made "every effort" to find him another job as required by Rule 11.5. He also alleges that he was denied due process when he was found guilty of charges not contained in his notice of dismissal.

MSD Civil Service Rule 11.5 (disability) reads as follows:

> An employee may be separated from the District for disability when he can not perform the required duties because of physical or mental impairment, however, *every effort* shall first be made to retain such employee in the service by transfer or demotion to a position which the employee can perform satisfactorily. (emphasis ours)

Anthony Collier was employed as a Crew Worker I on November 11, 1979. He was promoted to Crew Worker II where he remained until discharged on May 9, 1983. Collier sustained back injuries on the job on February 12, 1982, and on September 8, 1982. Collier returned to work on the Cobra truck in 1983, after his doctor had cleared him by finding no significant musculoskeletal disease and suggested he increase his physical activity. Appellant Collier was able to continue on the Cobra truck, but frequently complained of working in pain.

On April 12, 1983, MSD suspended Collier for insubordination arising from his work on the Cobra truck on April 8, 1983. Collier's suspension, later upheld by the circuit court, was not appealed to this court. After his ten day suspension, Collier was transferred as a Crew Worker II to the "Vactor truck" on May 2, 1983, which involved moving a seventy-five pound manhole cover, pulling out debris from the sewer hole, and using a pipe to vacuum the debris out. This work involved manual labor similar to that necessary on the Cobra truck.

On May 2, 1983, his first day on the Vactor truck, Collier acted as an observer

to learn his new job. He returned to work on May 3, 1983, and stopped work at 10:30 a.m. complaining of back pain. Collier saw a physician on May 4, 1983, who concluded that he could find nothing physically wrong with Collier. Appellant returned to work on May 9, 1983. He worked until about 10:30 a.m. when he again complained of back pain.

Collier was brought into the office of his supervisor, and met with James Keating, Maintenance Supervisor for the Sewer District, who offered Collier a Crew Worker II position on the Bucket truck or a voluntary demotion to a Crew Worker I level. All parties agreed that both positions required more manual labor, of the type Collier claimed he could not do, than was involved on the Vactor or Cobra trucks. Collier refused the two offered jobs and declined to remain on the Vactor truck, stating he was physically unable to do those three jobs. Management did not consider a re-transfer back to his job on the Cobra truck because of his previous disciplinary problems when working with that equipment.

Keating referred Collier to John Koeper, Director of Maintenance, who offered him the same two jobs which Collier again refused. Upon Collier's final refusal of the offered reassignments, Keating terminated him under MSD Civil Service Rule 11.5—Disability.

Collier appealed his dismissal and earlier suspension to the Civil Service Commission of the District, which sustained both the suspension and dismissal after a consolidated hearing. Collier then appealed to the Circuit Court of the City of St. Louis. On May 4, 1984, the circuit court upheld Collier's suspension but remanded his dismissal matter to the Commission to hear further evidence from MSD on how it met its burden of proving that it made "every effort" to retain Collier in a satisfactory position by transfer or demotion as required by Rule 11.5. After a second hearing, the Civil Service Commission issued a second opinion upholding Collier's dismissal. Collier again appealed to the circuit court, which affirmed the Commission's action on January 30, 1985. On February 25, 1985, Collier appealed to this court.

Appellant Collier claims the circuit court erred in upholding the Commission's findings that MSD had made "every effort" to find him another job because such findings are not supported by competent and substantial evidence on the entire record.

■ Due process demands that MSD must prove that it complied with its own Rule 11.5 in dismissing Collier. *Phelps v. Metropolitan St. Louis Sewer District,* 598 S.W.2d 163, 165 (Mo.App.1980). MSD may "separate" Collier for his disability only after first complying with its own rules. In this case, it had to make "every effort" to retain him by transfer or demotion.

Our review of the administrative adjudication is clear. MSD is vested by law with the fact finding function. § 536.090 RSMo 1969. Our review of the Commission's findings is limited to determining whether the facts as found are supported by competent and substantial evidence on the entire record. *Hermel v. State Tax Commission,* 564 S.W.2d 888 (Mo. banc 1978). Substantial evidence is such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. *Phelps,* 598 S.W.2d at 165. This court must examine the facts in the light most favorable to the findings of the Commission and if the evidence before an agency would support two opposing findings, an appellate court must uphold the agency's decision. *Board of Education v. Shank,* 542 S.W.2d 779 (Mo. banc 1976). In the area of credibility of witnesses, we give deference to the agency's findings because it is best able to judge the demeanor and conduct of the witnesses before it. *Phelps,* 598 S.W.2d at 165–66.

Appellant Collier argues that MSD must make every possible effort to retain him, under the terms of its own rules. This effort they failed to make, he alleges, because MSD only offered him two jobs which were both beyond his physical limits and did not consider or offer him other positions which he could perform.

The agency had established a meaning for "every effort" by its own established practice of reassignment and transfer. Under MSD's practice of transfer and reassignment, there was no existing policy of light duty assignments at the time of Collier's discharge. Light duty was abolished on March 5, 1982, and sick leave was instituted in its place. Collier did not qualify for sick leave because he lacked the required medical diagnosis of injury or disability. MSD supervisors who discharged Collier were knowledgeable about other jobs in his department and knew none were available that did not require physical ability which he claimed he did not have.

Testimony at the hearing indicated that MSD followed its own procedures. There was no objective evidence at all of Mr. Collier's disability. Usually, MSD requires a doctor's diagnosis of disability. MSD was faced only with Collier's subjective complaints of pain. Although Collier's wife testified before the Commission that his back pain prevents him from doing work around the house, even mowing grass or washing the car, her statements were not known to MSD supervisors before discharge. James Keating, Maintenance Supervisor, testified that it was not the customary practice to transfer an employee out of the Maintenance Department and that he did not consider it part of his responsibility to look beyond his department for Collier's alternate job options.

John Koeper, Maintenance Director, testified that there was a selection of other existing jobs but that he did not consider Collier for these jobs because he felt they were not available, or Collier's physical complaints precluded them, or they involved a higher skill level than Crew Worker II. Further, because Collier's complaints were medically unsubstantiated, Koeper felt that it was not necessary to construct an entire array of possibilities merely to oblige a worker who seemed to be trying to pick and choose the work he was willing to do. Both Keating and Koeper testified that, when Collier rejected their alternate job offers, they told him that they would have no other choice but to dismiss him and Collier responded, "Do what ya gotta do."

Collier cited other available positions involving lighter work which were not offered him, but Koeper explained that he had mentally considered the list of these jobs and rejected them because they were unavailable or Collier's physical complaints precluded them. Koeper testified that he will generally ask a disabled worker whether there is a particular job which he feels he could do and will consider that worker for that requested job only if he has the skills needed and after a doctor's evaluation. No doctor's exam was required for Collier because previous exams had indicated nothing was wrong. Collier indicated during the hearing that he would welcome reassignment to his original job on the Cobra truck, but Koeper and Keating never offered this option because they feared continued insubordination and thought the position filled. This was evidence sufficient to support a finding that work on the Cobra truck was not available. It also supports a finding that MSD considered and rejected alternative employment. We find these considerations and decisions of the supervisors complied with Rule 11.5. A reasonable effort was made. We find "every effort" in CSR 11.5 requires no more than was done. There was no conclusive evidence that there were *existing* and *available* positions which were not considered or not offered to Collier. Further, we find every effort to mean "every reasonable effort" and not "every possible effort" as appellant urges. Our interpretation is shared by other states facing identical language. *See Shandy v. Portland School Dist. 1*, 54 Or.App. 420, 634 P.2d 1377 (1981).

Based on the above testimony, the Civil Service Commission found that both Mr. Keating and Mr. Koeper had discussed with Collier possible reassignment to a Crew Worker II position or voluntary demotion to Crew Worker I. What was done was consistent with a policy followed with other employees. These offers were found

to be sufficient to fulfill MSD's duty to make "every effort" to retain a disabled employee when the Commission considered the highly subjective nature of Mr. Collier's physical complaints. The Commission ruled that, while it is MSD's duty to find an alternative job before an employee is separated from MSD for disability, it is not MSD's duty to review every position in the district with the employee and ask him if that position would be satisfactory. Instead, the disabled employee has a duty to cooperate with MSD and attempt to perform the duties assigned. Finally, the Commission found that MSD has no duty towards an employee who jeopardizes discipline and so need not transfer Collier back to the Cobra truck if it feels continued discipline problems may result.

We find that the facts as found by the Commission are supported by competent and substantial evidence on the entire record, and the circuit court did not err in upholding the Commission's decision.

Appellant also contends that the Commission denied him his due process rights under the federal and state constitutions when it found him guilty of uncooperative behavior when such charge was not contained in his original notice of disability dismissal under Rule 11.5. The discharge was on disability grounds and not for disobeying orders. The latter ground was the basis of Collier's suspension which was appealed to the Commission but not to the circuit court.

The issue of sufficiency of notice is a question of law which this court is free to decide for itself without reference to any decision of the Commission. *Wolf v. Missouri State Training School for Boys,* 517 S.W.2d 138, 142 (Mo. banc 1974).

To properly raise a constitutional question, a party must: (1) raise the question at the first available opportunity; (2) designate specifically the constitutional provision claimed to have been violated, such as by explicit reference to the article and section or by quotation of the provision itself; (3) state facts showing the violation; and (4) preserve the constitutional question throughout the appellate review. *Perez v. Webb,* 533 S.W.2d 650 (Mo.App.1976). If a party fails to assert his constitutional claim in his Petition for Review to the circuit court, it is not preserved for appeal. *Gray v. Florissant,* 588 S.W.2d 722, 724 (Mo. App.1979). Here, Collier failed to raise his constitutional question in his Petition for Review. He thereby waived any such claim. This court has reviewed issues not raised in the Petition for Review only in very limited circumstances. *See Century State Bank v. State Banking Board of Missouri,* 523 S.W.2d 856 (Mo.App.1975), *as discussed in, Ross v. Robb,* 651 S.W.2d 680 (Mo.App.1983), *transferred,* 662 S.W.2d 257 (Mo.1983).[1]

Accordingly, we deny appellant's claims and affirm the decision of the circuit court upholding appellant's dismissal for disability under CSR 11.5.

SIMON and GARY M. GAERTNER, JJ., concur.

---

1. The agency in *Century State Bank* failed to make findings of fact and conclusions of law as expressly required by statute and this court held that there is no requirement that the failure of an agency to make findings of fact and conclusions of law be included in the Petition for Review, nor need a request for same be made to the agency. *Century State Bank,* supra at 860. This holding was noted to be narrow in *Ross v. Robb,* 651 S.W.2d 680, 683, because the failure of the agency to conform to a statute governing its procedure deprived the appellate court of its jurisdiction to review the case in its entirety. All other grounds must be asserted in the Petition for Review. *Ross,* 651 S.W.2d at 683. *Ross* involved a teacher discharged for "immoral conduct" under § 168.116 RSMo 1978. On review, the circuit court reversed and based its decision on lack of a fair trial. This issue was not raised in the Petition for Review, and so was not reviewable on appeal.