Frances SHEPARD, Appellant,

v.

SOUTH HARRISON R–II SCHOOL DISTRICT, Respondent.

No. WD 37928.

Missouri Court of Appeals, Western District.

Oct. 21, 1986.

William J. Esely, Richard L. Parker, Bethany, for appellant.

John P. Beihl, Brown, Douglas & Brown, St. Joseph, for respondent.

Before TURNAGE, P.J., and SHANGLER and KENNEDY, JJ.

TURNAGE, Presiding Judge.

Frances Shepard has appealed from the judgment of the Circuit Court of Harrison County affirming the decision of the Board of Education of the South Harrison R–II School District to terminate her indefinite teaching contract. On appeal Mrs. Shepard contends that the Board acted improperly in terminating her contract on the basis of incidents predating a letter of warning sent to her by the Superintendent of Schools. She also argues that the Board was not adequately impartial as a hearing tribunal, since it and its attorney participated in investigating and prosecuting the charges against Mrs. Shepard. Finally, Mrs. Shepard argues that her contract should not be terminated for violation of Board regulations, because the Board adduced no substantial and competent evidence of the existence or content of such regulations and because the evidence showed that the school principal had promulgated contrary instructions. Affirmed.

Mrs. Shepard taught school in the South Harrison R–II School District for 36 years and had an indefinite contract with the District. In the 1983–84 academic year, she taught remedial math at Bethany Elementary School for grades one through six, giving supplementary instruction to children who, for one reason or another, were not performing at the level expected for their grade. During that year there were in effect Board of Education regulations, which included a provision regarding corporal punishment of students. The corporal punishment regulation provided that teachers were only to administer corporal punishment by blows to the child's "fleshy posterior" in the presence of the principal or his designated representative and that in no event should a teacher hit a child on the head. There was evidence that the Board of Education regulations were published by copies being placed in the teachers' lounge and library of each school building in the district.

There was also evidence that the principal at Bethany Elementary, Harvey Chau-vin, had promulgated rules indicating that a teacher could punish a child without the presence of the principal. Mr. Chauvin also told the teachers at a meeting before the beginning of the school year that, if they had a discipline problem with children, they should "bop them in the mouth."

In the fall of 1983, Mr. Chauvin received a report from the mother of Nicole Whitaker that Mrs. Shepard had slapped Nicole, a ten year old pupil in remedial math. He also received a series of telephone calls from the mother of another ten year old, George Hulet, (including some anonymous calls which he later determined to be from Mrs. Hulet) who complained about various teachers. One of Mrs. Hulet's complaints was that Mrs. Shepard had struck her son George in the back with her hand. Mr. Monachino, the then Superintendent of Schools, testified that he discussed the Whitaker incident with Mrs. Shepard and referred her to the Board's regulation regarding corporal punishment. Mr. Chauvin testified that he spoke to Mrs. Shepard about the Hulet allegations. In January of 1984, George Hulet complained to his mother that Mrs. Shepard had slapped him in the face.

On March 30, 1984 Mr. Monachino sent Mrs. Shepard a letter of warning of the sort required under Section 168.116(2) RSMo 1978[1] for termination of a teacher's indefinite contract because of the teacher's incompetency, inefficiency, or insubordination in the line of duty. The letter specifically alleged, *inter alia*, that Mrs. Shepard had violated the Board's corporal punishment regulations by striking children without the presence of the principal and by hitting students about the head. The letter stated: "Should any items [i.e., the enumerated shortcomings referred to above] still exist by May 1, 1984, your contract will be terminated."

On June 26, 1984 the Superintendent, Mr. Monachino, charged Mrs. Shepard with willful and persistent violation of the Board's corporal punishment regulations in

1. All sectional references are to Missouri's Re- vised Statutes 1978, unless otherwise stated.

regard to the Whitaker and Hulet incidents, as well as an alleged striking of Delbert McFall in January of 1984.

Mrs. Shepard requested a hearing before the Board of Education. At the hearing, George Hulet testified Mrs. Shepard had slapped him once on the back and once in the face. Nicole Whitaker also testified Mrs. Shepard slapped her, although her testimony left in doubt the extent to which the incident involved an actual slap and the extent to which Mrs. Shepard merely put her hand over Nicole's face to get her to quit talking during class. Delbert McFall testified that he could not remember any time when Mrs. Shepard struck him. There was conflicting testimony on virtually every relevant point.

The Board filed Findings of Fact and Conclusions of Law finding that Mrs. Shepard willfully and persistently violated Board regulations with regard to the Whitaker and Hulet incidents. Accordingly, the Board terminated Mrs. Shepard's contract as of October 30, 1984.

 Mrs. Shepard's first argument on appeal is that the Board's action was precluded by its warning letter, because the warning letter did not meet the requirements of § 168.116 and because all the actions charged occurred before the warning letter was ever sent, thereby denying Mrs. Shepard the opportunity to avoid termination of her contract by improving her performance. The flaw in Mrs. Shepard's arguments is that the Superintendent filed charges and the Board ultimately terminated her contract on the grounds that she had willfully or persistently violated the Board's corporal punishment regulation in slapping the two children, not on the grounds of insubordination, inefficiency or incompetence. A warning letter is necessary in order to terminate a contract on grounds of incompetence, inefficiency or insubordination, but not on the grounds of willful or persistent violation of regulations or the other grounds for termination under § 168.114. Mrs. Shepard argues that once the Board sent the letter, it committed itself to complying with the full warning letter procedure. Her argument is unsupported by either statutory or decisional authority. Contrary to Mrs. Shepard's argument, *Pollard v. Board of Education,* 533 S.W.2d 667 (Mo.App.1976), does not stand for the proposition that once a board has sent a warning letter, it must comply with warning letter procedure, even if it decides later to terminate the contract in reliance on some grounds other than incompetence, inefficiency or insubordination. In *Pollard* the Board of Education sent a tenured teacher an unacceptably vague warning letter. The Board later filed charges against her, conducted a hearing, and terminated her contract. Through all these stages of proceedings the Board relied on the grounds of incompetency, inefficiency and insubordination. On appeal the Board argued that it had terminated the contract on the grounds that the teacher's mental condition rendered her unfit to associate with children, and that no warning letter was necessary under § 168.116. The court held that the Board would not be allowed to specify alternate grounds for termination under § 168.114 for the first time after the charging, hearing and termination, when it was too late for the teacher to respond to the new grounds. The court in no way indicated that sending the warning letter limited the Board's options to proceeding against the teacher on the grounds of incompetence, inefficiency or insubordination or that sending the letter would require the Board to comply with the procedure for termination for incompetence, inefficiency or insubordination, no matter what grounds it later chose to rely on. This court would be altering the statutory requirements significantly by holding that sending the warning letter curtailed the Board's options to proceed as provided under other parts of the statute. Here, the letter was merely superfluous, and Mrs. Shepard was advised of the Board's new theory so that she could present her defense. Therefore, any inadequacies in the Board's warning letter in this case and the Board's failure to give Mrs. Shepard a chance to improve (as she would have had under the warning letter procedures) are irrelevant.

Mrs. Shepard next contends that she did not receive a fair trial, because the Board and the Board's attorney actively participated in the investigation and prosecution of the charges. As Mrs. Shepard acknowledges, under the statutory scheme providing for termination hearings the Board and its representatives will be involved both in prosecuting and judging cases. This combination of roles has been held not to result in a denial of fair trial unless the Board is prejudiced, so that it has predetermined to reach a particular result no matter what the evidence. *Ross v. Robb*, 662 S.W.2d 257, 260[7] (Mo. banc 1984). The record in this case does not reveal any predetermination by the Board to disregard the evidence. The only evidence suggesting such prejudice is evidence that former Superintendent Monachino intimated that the Board would terminate Mrs. Shepard's contract no matter what happened at the hearing. Mr. Monachino was not a member of the Board. This evidence was sheer speculation about the Board's intentions and is not a substantial basis to establish any predisposition on the part of the Board members not to carry out their statutory duties fairly.

Mrs. Shepard also argues that there is no substantial and competent evidence that the Board's regulation on corporal punishment was in effect at the time of the incidents in which Mrs. Shepard allegedly violated the regulation. At the hearing the Board's attorney refused to identify the School Board's policy manual as an exhibit. Instead, despite Mrs. Shepard's objections, the Board attorney and witnesses referred to the policy manual as "a rather light book" or "the large book there in front of you" or "that black thing." The Board attorney then adduced testimony that the unidentified "book" contained the District's regulations in effect for the 1983–84 school year and that District Exhibit 7 was a page copied from the unidentified book. District Exhibit 7 contained the corporal punishment regulation. Certainly, the District's peculiar method of compiling a record for review was less than commendable. However, in light of the fact that the regulation was reprinted in the notice of charges served on Mrs. Shepard and in the Board's Findings of Fact and Conclusions of Law, the Board may be deemed to have taken notice of the regulations. *Prokopf v. Whaley*, 592 S.W.2d 819, 823[6] (Mo. banc 1980), is a similar case in which the administrative rule relied on was not introduced into evidence during a hearing before the agency that promulgated the rule. The court held that since the rule was quoted both in the charges and in the agency's Findings of Fact and Conclusions of Law and since the record indicated that both the litigant and the agency were aware of the existence and content of the rule during the hearing, the agency would be deemed to have taken official notice of the rule and the record would contain sufficient evidence of the rule. *Accord Edmonds v. McNeal*, 596 S.W.2d 403, 408[9] (Mo. banc 1980). Therefore, the Board in this case shall be deemed to have taken official notice of its corporal punishment rule.

Mrs. Shepard argues that her contract should not be terminated for violating the Board's corporal punishment policy when Mr. Chauvin, the principal of her school, promulgated contradictory policies. Mrs. Shepard's argument fails, for there is no evidence that she relied on either of Mr. Chauvin's competing policies. The Board corporal punishment rule provided in relevant part:

> No teacher shall inflict corporal punishment on any pupil at any time without first consulting the principal of the school nor shall such corporal punishment be administered except in the presence of the principal or another witness who may be designated by the principal.
>
> Corporal punishment when resorted to should be inflicted on the fleshy posterior, with the hand or paddle. In no case shall the teacher inflict a blow upon the head.

Mr. Chauvin told his teachers at the beginning of the 1983–84 school year, that if any of them had a disciplinary problem with children to "bop them in the mouth." Mr.

Chauvin also prepared and distributed to the teachers a handbook that sanctioned spanking in front of another teacher (rather than the principal or his designated representative). Though Mr. Chauvin's statement and handbook were inconsistent with the Board rule, Mrs. Shepard's testimony clearly indicates she did not rely on Mr. Chauvin's statement, for she denied hitting the children. Therefore, Mrs. Shepard was not prejudiced in any way by Mr. Chauvin's statements.

Finally, Mrs. Shepard argues that there was not substantial and competent evidence that she violated the Board corporal punishment rule. Although there was a great deal of conflicting evidence on the circumstances of the three alleged incidents, the two children involved did testify that Mrs. Shepard struck them, as charged. Therefore, the Board's decision was supported by substantial and competent evidence. Once that determination is made by this court, the Board's decision to terminate is conclusive. *See Schmidt v. Board of Education,* 712 S.W.2d 45, 46 (Mo.App. 1986).

The judgment is affirmed.